### E. W. BREWER ET AL. v. OWEN L. COCHRAN.

Decided January 31, 1907.

**1.—Execution of Deed—Circumstantial Evidence.**

The execution of a deed may be established by circumstantial evidence.

**2.—Same.**

In a suit of trespass to try title, where the defendant claimed under an ancient lost deed, circumstantial evidence considered, and held sufficient to support a finding that such deed had been executed.

**3.—Same.**

The plaintiffs in trespass to try title claimed the land in controversy as the heirs of B.; the defendant claimed that B. sold the land in 1865 to one R., under whom defendant claimed, but that the deed from B. to R. was lost or destroyed without having been recorded, and sought to establish its execution by circumstantial evidence. Held, that a recital in a deed executed by R. in 1869, to a part of the same land, that the land thereby conveyed was the same conveyed by B. to R. in 1865, was admissible in evidence as a circumstance bearing on the issue whether or not B. deeded the land in controversy to R.

**4.—Evidence—Admissibility—Test.**

The proper test for the admissibility of circumstantial evidence ought to be whether it has a tendency to affect belief in the mind of a reasonably cautious person who should receive and weigh it with judicial fairness.

**5.—Actual Possession not Necessary.**

Actual possession by the grantee is not an essential element of proof of the execution of a lost deed by circumstances.

**6.—Deed Procured by Fraud—Burden of Proof.**

Plaintiffs in trespass to try title who allege that certain deeds from themselves to the defendant for the land in controversy, were obtained by fraudulent representations, have the burden to establish such fact by a preponderance of the evidence.

Appeal from the District Court of Hardin County. Tried below before Hon. L. B. Hightower.

*Oliver J. Todd,* for appellants.—The recitals in the deeds executed by Roberts were inadmissible, because they were made outside the plaintiff's claim of title and were not made by plaintiffs or by anyone connected with them in blood, estate or contract. Tapp v. Corey, 64 Texas, 596; Mooring et al. v. McBride et al., 62 Texas, 309; Watkins v. Smith, 91 Texas, 590; Phillips v. Sherman, 39 S. W. Rep., 187; Robertson v. McClay, 48 S. W. Rep., 35; Dodge et al. v. Freedman's Saving & Trust Co., 93 U. S., 379; Sabariego et al. v. Maverick et al., 124 U. S., 284.

The entries made by Roberts are self-serving to Roberts and he and those claiming under him should, for that reason, be precluded from

using them. Byers v. Wallace, 87 Texas, 510; Snow v. Star, 75 Texas, 411; Mooring & Lyon v. McBride, 62 Texas, 309; Gilbert v. Odum, 69 Texas, 670; Hays v. Hays, 66 Texas, 609.

*Ewing & Ring*, for appellee.

REESE, Associate Justice.—In this suit E. W. Brewer and other plaintiffs, heirs at law of William and Caroline Brewer, deceased, seek in an action of trespass to try title to recover of Owen L. Cochran the David Scott quarter league survey in Hardin County. They also seek to have a rescission of certain quitclaim deeds executed by them to W. H. Cochran, under whom the defendant claims, on the ground that the execution of said deeds was procured by fraudulent misrepresentations on the part of J. B. Cochran acting at the time for W. H. Cochran, who claimed to be the owner of the land, to the effect that the said William and Caroline Brewer had sold and conveyed the land in their lifetime.

The defendant answered by general denial and a plea of not guilty, and especially pleaded that the land in controversy had been sold and conveyed by deed executed November 30, 1865, by William and Caroline Brewer, plaintiffs' ancestors under whom they claim title, to Ingham S. Roberts, whose title defendant has. It was alleged that the land in controversy had been sold by the administrator of David Scott, the original grantee, under order of the Probate Court on June 1, 1863, the sale being on twelve months credit with vendor's lien retained in the deed. That in order to procure the money to discharge this indebtedness the said William and Caroline Brewer, on November 30, 1865, sold and conveyed the land to Ingham S. Roberts, and on the same day H. E. Simpson, administrator *de bonis non* of said David Scott, executed to said Brewers a release of said vendor's lien on the land. It is further averred that this deed and release are both lost or destroyed, as also the records thereof, if ever recorded, and it was sought to establish their execution by circumstantial evidence.

Defendant also set up the execution by plaintiffs and Mrs. Cooper, one of the heirs who did not join in the suit, of quitclaim deeds to W. H. Cochran, and denies any fraud or misrepresentation in the procurement of the same.

The case was tried without a jury and judgment rendered for defendant, from which plaintiffs appeal.

Without discussing the many assignments of error in the order in which they are stated in the brief, we will first dispose of certain questions which, in our judgment, are of controlling importance.

William and Caroline Brewer are common source of title, plaintiffs, who are their heirs at law, claiming title under such heirship, and defendant claiming title under deeds from said William and Caroline Brewer. Defendant established by evidence of duly recorded deeds title in himself from Ingham S. Roberts. The deeds from Roberts under which he claims having been made in October, 1869, and recorded immediately thereafter. To establish the link in his chain of title from Brewer to Roberts defendant endeavored by circumstantial evidence to show that William and Caroline Brewer had conveyed the land to

Roberts by deed executed November 30, 1869, which deed had been lost or destroyed together with the record thereof, if in fact it had ever been recorded. At any rate, defendant did not claim to have any other proof of the execution of this deed than that afforded by certain circumstances relied upon for that purpose.

It is not an open question in this State that the execution of a deed for land may be established by this character of evidence, and the principle is not controverted by appellants. The circumstances relied upon were: open and notorious assertion and claim of ownership by Roberts and those claiming under him from the date of Roberts deeds in 1869 down to the present time, together with payment of taxes. No actual possession was shown in any of the parties, plaintiffs or defendant or his vendors, but it was shown that the land was wild and unimproved land.

Defendant further relied upon the evidence afforded by certain papers and documents found among the papers of Ingham S. Roberts, who died in 1885, and also the recitals in the deeds of Roberts executed in 1869, which are links in defendant's chain of title. Appellants objected to the introduction in evidence of these papers and documents and also the recitals in the deeds from Roberts, and reserved proper bills of exceptions to the rulings of the court admitting the evidence, and the points involved are presented by proper assignments of error. In appellants' brief the most serious attack is upon the admission in evidence of the recitals in the deeds from Roberts.

On October 5, 1869, by deed of that date Roberts sold and conveyed a half interest in the land in controversy to Dennis Perkins and on October 7, 1869, he sold and conveyed the other half interest to appellee Owen L. Cochran. In the deed to Cochran appears the following recital, in connection with the description of the land conveyed: "One undivided half of that one-fourth of a league of land granted by the State of Texas to David Scott . . . and conveyed by David Burrell and H. E. Simpson, administrators representing the estate of David Scott, deceased, as per deed dated June 1, A. D. 1863, and November 30, 1865, to William and Caroline Brewer, and by them to me as per deed dated November 30, 1865, which patent and deeds are here referred to as part of this conveyance." The deed to Perkins contains substantially the same recitals.

The appellants' objections are to the recitals as to the conveyance from William and Caroline Brewer to Roberts, on the ground, substantially, that they are recitals in deeds between third parties, having no connection with themselves or their said ancestors, and are selfserving declarations of Roberts.

The other papers and documents admitted over appellants' objections are:

1. A letter of Isaiah Junker to Ingham S. Roberts, which is here inserted entire:

"Beaumont, Texas, November 27, 1865.

Dr. I. S. Roberts,
    Dear Sir: I have almost succeeded in making the trade with Brewer & wife for the David Scott Headright 1107 acres of land. From all

I have since learned, it is better than I represented it to you; but owing to the fact of there being no offices in this county, the separate acknowledgment of Mrs. Brewer can not be taken, and I shall have to get them if possible to go to Liberty and execute the papers there. Brewer and wife are joint owners in the purchase of the land at the probate sale, and their joint note was given for the payment at 12 months from date. The note is yet unpaid and I could not make the trade so as to get titles all right without paying the note, so title could be made to Brewer from the administrator of Scott's estate, which I agreed to do, in order to secure this land, which is the best bargain I know of anywhere at this time. But it will take all the money you and Gentry have in my hands, $700, and something over, as I am to pay Brewer and wife $150 and pay the note and interest, amounting to over six hundred dollars. With what I am to pay Brewer and wife will make the land cost near $800— that is, if we could close the trade here, but if I can get them to go to Liberty to close the matter, I expect I will have to pay their expenses, which will be twenty-five or thirty dollars or more. This will leave me without any money and one hundred dollars or over out of my own pocket, and will make it necessary that I wait until I get more funds from you. As I can not call on Gentry, for the deed to the land will be to you, I hope you will not allow me to be disappointed in getting money to replace Gentry's part at once.

Brewer is hard up for money, and I think will go to Liberty with me and finish the deed and sale. He thinks I want the land to pay another debt. No other party has yet made him an offer, but I must not allow much time to elapse as others might. There are many strangers about and I fear some of them want land. He has no suspicion that I want the land very bad.

I wrote you a note by last train. Do not fail to write and send money.                              Respectfully,

                                                          Isaiah Junker."

2.   Certain entries from a memorandum or cash book as follows:

"Isaiah Junker, Dr.

| | | |
|---|---|--:|
| Nov. 15 | Cash paid to self | $ 10.00 |
| 22 | Cash paid to self | 25.00 |
| | Cash given Junker, $200 | 200.00 |
| | Cash sent Junker, $600 | 600.00 |
| Dec. 21 | Cash sent with A. M. Gentry by express | 900.00 |
| Jan. 10 | Cash given Junker at Austin | 200.00 |
| | Amt. balance paid him | 20.00 |
| 30 | Cash to self | 80.00 |
| 30 | Bill of groceries, Milby | 41.50 |
| | Land certif Stearns for 640 | |
| | 4 land certif Williams | |
| | Cash Specie | 150.00 |
| | Groceries at Gregory | |
| | Do at Christians | 21.27 |
| Aug. 20 | Cash Austin | 20.00 |

Appellee contends that the item "sent to Junker, $600" referred to money sent to Junker by Roberts in obedience to the request* in the letter, with which to pay for the Brewer land. It was proven in connection with these papers that Roberts was a physician residing in Houston at the date of these transactions, and engaged in buying and selling land; and that Junker was at that time a land agent residing at Beaumont. It was proven that Roberts died in 1885; that the entries in the account book, which showed it to be a book of cash entries, were all in Roberts' handwriting, and both letter and account book were found among Roberts' papers and were evidently what they purported to be. The entries in the account of Isaiah Junker alleged to have reference to the purchase of this land while not dated, were indubitably shown by the dates of those preceding and succeeding it to have been made between November 22 and December 21, and other entries in the book are sufficient to authorize the inference that the entries were made during the year 1865. The loss or destruction of the deed from the Brewers to Roberts, if any such ever existed, was established and the fact that no record of it could be found, to show the necessity of the resort to circumstances in making proof of its execution.

With reference to the admissibility of this evidence the trial court says in its conclusions of law: "The aforementioned recitals made in the deeds of Ingham S. Roberts, as also the letter in evidence written by Isaiah Junker, and the entries in evidence made by said Ingham S. Roberts, are competent under the facts of this case, not by way of estoppel or the like, but as circumstances bearing on the issue as to whether William and Caroline Brewer deeded away the land in controversy to Ingham S. Roberts."

The other evidence in the record was sufficient to show a continuous claim of ownership of, and title to, this land by those claiming under the deeds of Roberts from the date of his deed to the present time by every indicia of ownership short of actual possession of the land. This evidence consisted of various conveyances of the land, all promptly placed upon record from time to time, and rendition and payment of taxes.

Statements of one in possession of land explanatory of such possession have been held admissible even though they be selfserving in their tendency. (Grayson v. Lofland, 52 S. W. Rep., 123; 3 Wigmore on Ev., p. 2296.) In this State it has been held that actual possession under an alleged deed is not an essential element of proof of the execution of such deed by circumstances, or to create an inference or presumption of fact from such circumstances, of the execution of such deed. (Garner v. Lasker, 71 Texas, 431; Baldwin v. Goldfrank, 88 Texas, 257.) Where, then, under such rule it is sought to establish such deed from circumstances, and among such circumstances are long and continuous claim of title and ownership, which is not shown to have been disputed by any adverse claim, with such indicia of ownership by payment of taxes, successive conveyances, etc., as are here present, we can see no objection to the application of the rule referred to, to the admission of evidence of declarations made by persons claiming such title and ownership, which serve to explain such claim in cases where the parties are all dead and length of time by destroying other, perhaps more satisfactory proof, has created the necessity of a resort to the evidence of such declarations.

To the evidence of such claim of title to land as is afforded by selling and conveying it, it might be objected that it was selfserving, but we think that it has never been held that such fact can not be resorted to as evidence of a claim of title thereto, when a resort to circumstantial evidence is had to establish the execution of a deed or the presumption of a grant. Such claim of title so evidenced is admitted, not as direct proof of title, but to show claim of title, which is a circumstance which may be considered in such cases, where the resort to such evidence becomes necessary. Every such sale and conveyance involves necessarily, by presumption, a claim of title in the grantor, which is nothing more than a declaration that he has title, and it is for that purpose that the evidence is admitted. The recitals in the deed admitted in evidence go only a step further and show a claim by Roberts that he had title from a certain source, the execution of the deeds, in and of itself, showing a claim of title. The recitals were not offered, nor admitted, as direct evidence of execution of the recited deeds, but only as a circumstance showing a claim by Roberts made as early as 1869, nearly forty years ago, as explanatory of his claim of title in himself, that the Brewers had conveyed it to him. The claim of title and assertion of ownership as evidenced by various acts of sale and conveyances, all made matter of public record, and by payment of taxes by his vendees, are admissible as circumstances, without actual possession, which is not essential, especially in case of wild land such as this, of which there has never been actual possession by anybody. If, in case Roberts had been in actual possession, his declarations as to the source of his title, under the circumstances, would have been admissible as a circumstance to show lawful origin of his title and to explain the nature and character of his claim, we do not see why such evidence would not be admissible in the present case to explain his claim of title, which fact is in itself admissible as a circumstance to prove the execution of the deed which was necessary to give lawful origin to his title. Mr. Wigmore in his work on Evidence says:

"One in possession of property is presumed to be the owner of it. As making more definite and significant the nature of the person's custody or occupation, and as giving it the significance of an exclusive control and of a possession in the fullest sense, the acts and declarations of claim of title by the person may be decisive, and should therefore be considered for that purpose; without, however, conceding to them any force as hearsay assertions." (3 Wigmore Ev., sec. 1779.) In this connection the author cites with approval the opinion, Justice Paine speaking for the court, in Roebke v. Andrews (26 Wis., 311-317), from which we quote:

"The law gives to the possession of either real or personal property under a claim of title the effect of being *prima facie* evidence of title. It is sometimes briefly stated that "possession is *prima facie* evidence of title." But, when so stated, it is always implied that the possession is under a claim of title. It is that fact which gives to it its character and legal effect. . . . It is thus seen that, wherever title is sought to be proved by possession, the claim of title accompanying that possession is not only proper but material and necessary to be known. And inasmuch as every person whose title is in issue is permitted to make out

a *prima facie* case by proving possession if he choses, he must also be allowed to give character and effect to that possession by proving what title he claimed in connection with it. The immediate point of inquiry is, what title was claimed, and not what really existed; and, that being so, inasmuch as what a man claims consists of what he asserts and declares in respect to his rights, his declarations are original evidence of the fact. And to allow him to prove them for that purpose is no more liable to the objection of allowing him to manufacture evidence for himself by his own statements than it would be, where it became material to prove a particular demand or notice, to allow him to prove his own declarations containing such notice or demand. The very nature and object of the inquiry establish the limit to the effect of his declarations as evidence. They are evidence only to show to what extent he claimed title; and, so far as they go beyond that and assert any facts in regard to the title they are not evidence of any such facts."

In the case of Harrison v. Friar (28 S. W. Rep., 250), Justice Williams of this court delivering the opinion, it was held with regard to recitals in a deed 30 years old of exactly the same character as those in Roberts' deeds, that they were admissible for the purpose of showing that the person executing the deed (in the present case Roberts), and his vendees, for more than 30 years, claimed the land in controversy under the conveyance thus asserted by him to exist. It was further held that "Supplemented by other circumstances showing inability to produce better evidence of the existence of such transfer, either oral or written, the assertion of a claim of ownership, etc., thereunder, such recitals would authorize the court to presume or infer the fact in question," that is, that Brewer and wife had parted with their title to Roberts. Upon this point the case is on all fours with the present case.

It must not be forgotten that these recitals were made in deeds nearly forty years old, which were intended to be, and were entered upon the public records and that they were not made secretly in a corner, and that the evidence was admitted not as direct evidence of the execution of the recited deed, but only a circumstance to be considered by the court or jury trying the case upon the issue of title in Roberts. (Texas Tram & Lumber Co. v. Gwin, 52 S. W. Rep., 112; Grant v. Searcy, 35 S. W. Rep., 863.) As to the danger in admitting such evidence Mr. Wigmore says: "In the second place, the danger in practice of using such declarations is overestimated; it is not likely that a jury would allow an opposing claimant's direct evidence of title to be overthrown by the possessor's mere assertions; and, if there is no such direct evidence, then no great harm is likely to be done in allowing the possessor to strengthen the conceded presumption in his favor by exhibiting the positiveness and completeness of his claim. Both in theory and in policy the admission of such declarations seems proper." (3 Wigmore Ev., p. 2297.)

With regard to the letter of Junker and the entries in the account book of Roberts the evidence was of itself insignificant, but we have, independent of it, the assertion of Roberts, made in 1869 by the execution of deeds by him, that the land belonged to him, this assertion or claim being involved in the fact that he undertook to sell and convey it as his own. We have further his claim, at the same time, as shown by the recitals in the deeds, that his claim of title rested upon a deed to him

from William and Caroline Brewer, the only source from which he could get title, executed November 30, 1865. In connection with this evidence, and with evidence that Roberts lived at that time in Houston and was engaged in buying and selling land for profit, and that Junker was a real estate agent at Beaumont, appellee offered in evidence the letter of Junker to Roberts dated November 27, 1865, found among the private papers of Roberts where such a letter, if genuine, would properly be found, the purport of which was to advise Roberts that he, Junker, had, as agent for Roberts, about closed the trade with William and Caroline Brewer for the David Scott Headright (the land in controversy) and requesting Roberts to send him more money, as that which he had in his hands was not sufficient to pay for the land. In connection with the letter appellee offered in evidence the original entries in Roberts handwriting in an old account book kept by him at the time, which entries showed that at some date between November 27 and December 22, 1865, Roberts sent to Junker $600. It was a reasonable and presumable inference to be drawn by the court or jury trying the case that the entry was about the time of and immediately succeeding the date of Junker's letter. These two items of evidence were admitted and considered by the court trying the case as a jury as circumstances merely tending to support appellee's claim, along with other circumstances offered and admitted for that purpose. The whole doctrine of the proof of facts by circumstantial evidence which, while not directly establishing the fact sought to be proven, establishes other facts from which the existence of the disputed fact may be, with more or less probability, inferred, rests upon the acknowledged results of human experience. "The conclusions and tests of human experience must constantly control the standards of legal logic."

We think the following is a sound rule for the government of courts in passing upon the admissibility of such evidence as applicable to the Junker letter, the entries in the account book and also the recitals in the deeds:

"But yet the competency of a collateral fact to be used as the basis of legitimate argument is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough if these may tend, even in a slight degree, to elucidate the inquiry or to assist, though remotely, to a determination probably founded in truth. Indeed, to require a necessary relation between the fact known and the fact sought would sweep away many sources of testimony to which men daily recur in the ordinary business of life; and that can not be rejected by a judicial tribunal without hazard of shutting out the light. Merely foreign matter must be avoided; but, though in appearance foreign, if it bear at all on the main subject, it must be heard. . . . The convincing power of the influence is for the jury, when weighing the value of the fact proved,—not for the judge, in determining the bare question of its relevancy; it is sufficient for the purposes of his inquiry that it has some affinity with the principal inquiry, though this may be weak or remote." . . .

"But as a safe practical rule it may be laid down that in no case is evidence to be excluded of any fact or circumstances, connected with

the principal transaction, from which an inference to the truth of a disputed fact can reasonably be made." . . .

"The proper test for the admissibility of evidence ought to be, we think, whether it has a tendency to affect belief in the mind of a reasonably cautious person who should receive and weigh it with judicial fairness." (Stevenson v. Stewart, 11 Pa., 308, cited in 1 Wigmore on Evidence, 107, 108.)

We think it can safely be said that to one seeking the truth as to the facts in controversy, unbiased by interest or other motive to affect him in such search, each of the circumstances referred to, and more especially all of them when taken together, would be considered as entitled to serious consideration, in ascertaining whether or not Brewer and wife had conveyed the land.

We are of the opinion that the court did not err in admitting any of the evidence referred to "as competent under the facts of this case, not by way of estoppel, but as circumstances bearing on the issue as to whether William and Caroline Brewer deeded away the land in controversy to Ingham S. Roberts," as indicated in its conclusions of law.

In connection with this evidence it was proven that Perkins to whom Roberts conveyed a one-half interest in the land in 1869, under which deed appellee proved title in himself, rendered one-half of the land for taxation for every year from 1871 to 1901. It was not shown that Cochran rendered the other half for taxes until 1882, but rendition by him for nearly every year from that time to the present was shown, and there was evidence tending to show that the vendees of Roberts had paid all taxes on the land since the date of his deeds to Perkins and Cochran. The land was rendered for taxes by Brewer for the years 1863 and 1864 and never afterwards. Nor is there any claim that he or his heirs ever rendered it for taxes or paid taxes on it except for these two years, which were the years during which he and his wife were the owners, if appellee's contention that he sold it in 1865 is correct. Brewer and wife left Jefferson County, where they were living at the time of the alleged sale, in 1868, and removed to Kimble County with their family except one married daughter who remained in Jefferson County. William Brewer died in 1886 and his wife in 1892 in Kimble County. They were poor people with very little of this world's goods. As expressed in appellant's brief, "they were in hard straits after the war." The evidence on the whole authorizes the conclusion that neither Brewer nor his wife, nor any of his heirs, ever asserted in any way any title or claim of ownership in the land, after the date of the alleged sale to Roberts. The evidence referred to was sufficient to authorize the inference or presumption of fact, that Roberts' title had a lawful origin in a deed from Brewer and wife. In establishing the execution of a deed by circumstantial evidence, that is, as an inference from proven circumstances, it is not necessary that these circumstances should remove all reasonable doubt of the execution of the deed. It needs only that the fact be established as other facts are required to be proven in civil cases, by a preponderance of the evidence. (Grayson v. Lofland, *supra;* Fletcher v. Fuller, 120 U. S., 534.)

The evidence being, in our opinion, sufficient to support the court's conclusion of fact that Brewer and wife had sold and conveyed the land

to Roberts, we can not say there was error in such conclusion. This is decisive of the case, as in this view appellee does not need the quitclaims from appellants to make his title good. This, moreover, removes every ground upon which said conveyances are attacked by appellants. Upon this branch of the case, however, our conclusions are that, independently of the trial court's conclusions upon the issue of the execution of the deed from Brewer and wife, the quitclaim deeds of appellants were a bar to their recovery until they were cancelled and set aside for the reasons set out in plaintiffs' petition. Plaintiffs having alleged that these deeds were executed upon the false representations of Cochran that William and Caroline Brewer had in their lifetime sold and conveyed the land, they had the burden of establishing by a preponderance of the evidence that these representations were made; that they were thereby induced to execute the deeds; and that such representations were not true. Appellants failed utterly to show, affirmatively, that Brewer and wife had not sold and conveyed the land as claimed by appellee, but relied upon the failure of appellee to show that this had been done. If appellee had had only the alleged title from William and Caroline Brewer to rely upon, upon failure to establish such deed appellants would have been entitled to recover upon their title by heirship. To meet appellee's defense under the deeds from themselves they had to go further and overthrow these deeds. The trial court found that the representations of Cochran had not been proved, by a preponderance of the evidence, to be false, and in this conclusion we agree, and upon this ground also appellants were not entitled to recover. The evidence rebuts every inference of fraud on the part of Cochran, legal or moral. It shows not only that he believed that the Brewers had sold and conveyed the land, but that he had abundant grounds for such belief. If he did not tell appellants the grounds for such belief, they could not reasonably have concluded that he was speaking of a matter of which he had actual personal knowledge. (14 Am. & Eng. Ency. of Law, pp. 99, 100.)

We have not thought it necessary to discuss the numerous assignments of error and propositions thereunder in appellant's brief, which are multiplied beyond any necessity therefor in the proper presentation of the issues involved, and the brief in consequence extended beyond any reasonable limits.

What we have said disposes of all of the assignments of error urged by appellants, each of which is overruled. Finding no error the judgment of the trial court is affirmed.

*Affirmed.*

Writ of error refused.