[8224] Writ of error denied by Supreme Court.
This is an action of trespass to try title brought by plaintiffs n error against defendants in error to recover title and possession of an undivided one-half interest in two tracts of land of 76 1/2 acres each, parts of a tract of 354 acres situated in Harris county. The plaintiffs claim by inheritance under Jesse R. Sharman and the defendants claim by purchase under Harriet Caroline Sharman.
The land was conveyed to Harriet Caroline Sharman by R. D. Westcott on August 12, 1854. At the time this conveyance was made Harriet Caroline Sharman was the wife of Jesse S. Sharman. The deed does not in apt words convey the land to the wife as her separate property to be held for her sole use and benefit, nor does it recite that the consideration for the conveyance was her separate property or funds. Jesse S. Sharman died in 1867, and Harriet Caroline Sharman In 1885. The plaintiffs are children of two of the daughters of said Jesse S. Sharman, and Harriet Caroline Sharman. The defendant Joseph R. Sharman claims under deed from his mother, the said Harriet Caroline Sharman, executed in 1881, and the other defendants, who are numerous and need not be named, under deeds from Joseph R. Sharman. In addition to pleas of not guilty, all of the defendants, save two who filed disclaimers, pleaded the limitations of 3, 5, and 10 years. The cause was tried with a jury, and a verdict and judgment were rendered in favor of defendants. The jury were instructed to return a verdict in favor of some of the defendants on their pleas of limitation, and as to the other defendants the cause was submitted upon special issues. In response to questions propounded to them by the charge the jury found that the consideration given for the conveyance from Westcott to Mrs. Sharman was her separate property, and that the deed was made to Mrs. Sharman at the request of her husband, and with the intention on his part to have the land conveyed to her as her separate property.
Upon these issues the record discloses the following facts: Jesse Sharman, who died in 1867, left nine surviving children, and these children, with one or two exceptions, lived on or near the property in question until after the death of Mrs. Sharman in 1885, and none of them ever questioned the claim of their mother to the sole ownership of the land in controversy which she continuously asserted until she sold it to defendant Joseph R. Sharman in 1881. All of the children living at the time this suit *Page 245 
was brought in October, 1907, refused to join therein, and the plaintiffs in the suit are the children of Nancy Sharman, who first married Conroy and then Davis, and Eliza Sharman, who married Stephanes, both of whom were daughters of Jesse and Harriet Sharman. Mrs. Stephanes died in 1872 and Mrs. Davis in 1895, and neither of them is shown to have ever asserted any claim to the land. During Mrs. Sharman's lifetime she openly and notoriously asserted exclusive ownership of the land, and this claim, so far as the record shows, was recognized and acquiesced in by all of the nine children of herself and Jesse Sharman.
Jesse Sharman, the oldest living son of Jesse S. and Harriet Caroline Sharman, who was a witness for plaintiffs, testified that he was born in Harris county in 1850, and lived with his father and mother on the old Sharman place until about a year after the death of his father, which occurred in 1867, end from that time on until her death in 1885 he lived within one and one-half miles of his mother. During all of this time his mother claimed exclusive ownership of the land in controversy. His mother told him that she owned a negro woman which his father sold, and to compensate her therefor gave her a negro man, and he afterwards gave the negro man for the land, "and, to make her even for the negro he had sold, had the land deeded to her."
Gid Westcott, who married one of the daughters of Jesse S. and Harriet Caroline Sharman, testified that some time in the 70's when another of Mrs. Sharman's sons-in-law, a Mr. Talley, talked about bringing a suit for an interest in the land he (witness) had a conversation in regard to the land with Tom Sharman, who was the oldest child of Mr. and Mrs. Sharman and who is now dead. This testimony is as follows: "I have talked with Tom Sharman about this matter. At the time when this matter came up about suing the mother, in the 70's, Tom Sharman had a conversation with me about it. I do not know when Tom Sharman was born; he was an older man that I was; he was not living with his mother at the time; he was married then. Before he married he did live with his mother and father, and was living with them at the time this slave transaction occurred. At the time of this slave transaction he was over 14 years old, and lived with his father and mother until he married in the 60's. He lived with his father until he died, and lived with his mother until he married. Tom Sharman said it was his mother's property." On cross-examination by the plaintiffs, Gid Westcott further testified: "It was T. J. Sharman that said the property was his mother's. He did not say why it was; he didn't say who paid for it; he said that was his mother's property. I don't know whether it was his idea or whether he knew it positively. He said it was his mother's property, and that he was opposed at Mr. Talley (referring to the projected suit), and got vexed at it."
S. T. Sykes testified as follows: "I had a conversation with Tom Sharman when I was buying from the old lady. At the time I talked with him, before I bought from the old lady, as to what he said about his having a claim to the land. He didn't have any, and he said it was his mother's property. I did know Mrs. Conroy (referring to the deceased mother of the plaintiffs) in her lifetime, and I talked in regard to me, Tom and her, and she said her mother bought it, but her father was as much interested as she was, and she said her mother's money paid for it. She told me her mother's money paid for it."
H. C. Sapp testified: "That the oldest son of Mrs. Sharman, Tom Sharman, sold him a piece of land that he had gotten from his mother, and that said Tom Sharman told him that the title of this land was vested in his mother; that she had a perfect right to sell it to whom she pleased, and he said it was her individual property. He lived with his father and mother during his life up to his death."
Joe Sharman testified: "Mrs. Conroy's husband died either just before or just after my father died. She is the mother of the Conroy plaintiffs, and she died March 31, 1895. Mrs. Stephanes died March 27, 1872. She is the mother of the other set of plaintiffs in the suit."
Prior to her sale of the two tracts of 76 1/2 acres each to her son, Joseph R. Sharman, Mrs. Sharman had sold to various parties other portions of the 354-acre tract. These conveyances were made with the knowledge of her children, and her right to make these sales does not appear to have been questioned by any of them, and the title of the purchasers from her and from Joseph R. Sharman appears to have been recognized by all of the heirs of Jesse S. Sharman, at least to the extent that no objection is shown to have been made by any of them to the possession of said purchasers, and no effort to recover any part of the land until this suit was brought.
In addition to the portions of their testimony before set out, the witnesses Sykes, Sapp, Westcott, and Joseph Sharman each testified to statements made by Mrs. Sharman in regard to the consideration paid for the land, and the execution of the deed to her, which were in substance the same as the statements testified to by the witness Jesse Sharman before set out. This testimony of the witnesses Sykes, Sapp, Westcott, and Joseph Sharman was objected to by the defendants on the ground that said statements and declarations of Mrs. Sharman were "self-serving, hearsay, and immaterial," were made privately and were not notorious; and "that none of the plaintiffs or their ancestors, or those in privity with them, were present, or given a chance to deny the *Page 246 
statement, and such statement was never repeated to them, or in their presence, and the statements called for were long after the acquisition of the property which is presumed to be community property, and long after the death of Mrs. Sharman's husband." These objections were overruled by the court, and this ruling is complained of under the first, second, third, and fourth assignments of error.
We do not think the court erred in this ruling. The testimony was not offered nor admitted as evidence in itself of the title of Mrs. Sharman, but to show the circumstances of her claim and its character, and we think when taken in connection with the other circumstances shown by the evidence, such as the long continuance of her claim, her open assertion and exercise of acts of exclusive ownership, evidenced by repeated sales of portions of the land, and the nonclaim of the heirs of Jesse Sharman who knew of these sales and assertions of sole ownership by her, these statements could be properly considered by the jury in determining the question of whether the land was in fact deeded to her with the consent of the husband and with the intention to make it her separate property. The parties to the transaction, which occurred more than 50 years before this suit was brought, are long since dead, and the statements of Mrs. Sharman as to the character of her claim and the facts upon which it was based, repeatedly made when she was in possession of the land, do not appear to have been questioned by those whose interest would have prompted their denial if the statements were not true, and who knew of said statements, and were then probably in a position to show their falsity, if they were false, are circumstances which are logically relevant and important in determining the question of whether the property was intended to be conveyed to Mrs. Sharman as her separate property, and should not, after this lapse of time when better evidence cannot be procured, be rejected as hearsay and self-serving. Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S.W. 1033; Frugia v. Trueheart,48 Tex. Civ. App. 513, 106 S.W. 741.
If this conclusion is not sound the assignments cannot be sustained, because other undisputed evidence to the same effect as that complained of by the assignments was admitted without objection. The testimony of Jesse Sharman, before set out, which was admitted without objection, contains in detail the same statements of Mrs. Sharman as to her claim to the land, and the facts upon which it was based as the evidence objected to under these assignments. Having permitted the testimony of Jesse Sharman to go to the jury without objection, plaintiffs will not be heard to complain that other testimony, showing the same facts, was admitted over their objection. Hammon v. Decker, 46 Tex. Civ. App. 232,102 S.W. 454; Rice v. Dewberry, 93 S.W. 735.
If, however, all of the testimony complained of under these assignments should be excluded, upon the other undisputed evidence which we have before set out no other verdict than one in favor of defendants upon the issue of title in Mrs. Sharman could have been properly rendered.
The undisputed testimony of plaintiffs' witness Jesse Sharman, to the effect that his mother told him that his father had the deed made to her for the purpose of making the land her separate property, and that he did this to compensate her for a negro woman which she had received from her father and her husband had sold, was admitted without objection, and would, standing alone, have authorized a verdict in favor of defendants. Hardin v. Jones, 29 Tex. Civ. App. 350, 68 S.W. 836. The testimony of this witness, taken in connection with other undisputed evidence admitted without objection, and showing the continuous claim and assertion of ownership by Mrs. Sharman and the long acquiescence in such claim by all of the heirs of Jesse Sharman, and its affirmative recognition by some of them, including the mother of most of the plaintiffs, leads to the irresistible belief that the property belonged to Mrs. Sharman in her separate right, and no other reasonable conclusion could have been reached by the jury.
This view of the force of the undisputed evidence renders a discussion of the remaining assignments of error presented in plaintiffs' brief unnecessary. If any error is shown by any of said assignments, in view of the undisputed evidence before set out, such error was harmless, and all of the assignments are therefore overruled, and the judgment of the court below affirmed.
Affirmed.