GREEN et al. v. GALVESTON CITY CO. et al. .(No. 7271.)

(Court of Civil Appeals of Texas. Galveston. Dec. 6, 1916. Rehearing Denied Jan. 4, 1917.)

1. CORPORATIONS ⟨⟩109—TRANSFER OF STOCK —EVIDENCE—SALE.

In an action to establish ownership of corporate stock originally purchased by plaintiffs' ancestor, the evidence may be sufficient to show that the ancestor had sold the stock during his lifetime, though there is no evidence as to the identity of the buyer, and no claim to such stock had ever been made.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 462; Dec. Dig. ⟨⟩109.]

2. CORPORATIONS ⟨⟩109 — OWNERSHIP OF STOCK—EVIDENCE.

In an action to establish ownership of corporate stock originally issued to plaintiffs' ancestor, evidence that one share less of the stock

had been issued than plaintiffs admitted in their petition had been taken up by the corporation is sufficient to warrant the jury in finding that the share issued to plaintiffs' ancestor had been taken up by the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 462; Dec. Dig. ⊙109.]

3. PLEADING ⊙36(2)—EFFECT—ADMISSIONS.

In such an action plaintiffs are bound by the allegations of their pleadings as to the amount of stock taken up by the corporation.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 81; Dec. Dig. ⊙36(2).]

4. EVIDENCE ⊙89 — PRESUMPTIONS — REBUTTAL.

The presumption that the relation of shareholder, shown to have once existed, continues, may be rebutted by competent evidence, especially where the stock could be transferred by the owner and the title passed by mere indorsement and delivery.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 111; Dec. Dig. ⊙89.]

5. CORPORATIONS ⊙135 — RELATION TO STOCKHOLDERS—TRUST.

A corporation stands in the relation of trustee to its stockholders, but this relation applies to the true owners of the stock, and not merely to those who from the records of the corporation appear to be owners.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 467, 469; Dec. Dig. ⊙135.]

6. CORPORATIONS ⊙109 — OWNERSHIP OF STOCK—LIABILITY OF CORPORATION.

A corporation, when sued by the heir of one shown by its books to have been the holder of stock, transferable by indorsement of the certificate, can defend the action in the interest of the real owner, though his identity may be unknown to it, if it has evidence that the stock has been sold.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 462; Dec. Dig. ⊙109.]

7. TRIAL ⊙350(1)—SPECIAL ISSUE—BURDEN OF PROOF.

A special issue as to whether plaintiffs' ancestor was the owner of certain corporate stock at the time of his death, that if the jury so believed from the preponderance of the evidence, they should answer the issue "Yes"; otherwise answer it "No," was not objectionable as telling the jury that the burden was on plaintiffs to prove affirmatively that the stock had not been sold by their ancestor.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 828; Dec. Dig. ⊙350(1).]

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Action by Annie Lomax Green and others against the Galveston City Company and others. Judgment for the defendants, and plaintiffs appeal. Affirmed.

G. E. Mann, of Galveston, and Ramsey Black & Ramsey, of Austin, for appellants. Maco Stewart and Edw. F. Harris, both of Galveston, for appellees.

McMEANS, J. This suit was brought by the appellants, claiming as the heirs of Thomas Green, against the Galveston City Company, and Maco Stewart, appellees, alleging the original ownership by said Thomas Green of one certain share of stock in the Galveston City Company issued to him in 1838, identified by trustees' certificate No. 70

out of Book E, and alleging the loss of said certificate and seeking to obtain a new certificate for said share, and recognition as stockholders, and to obtain a judgment for dividends due on said share, and for a proportionate interest of the property and assets of the corporation, and also seeking other relief not necessary to here mention.

The pleadings of plaintiffs and defendants are very lengthy, and, as no questions presented upon this appeal arise upon them, they will not be set out in this opinion. It may be said, however, that the plaintiffs' petition in this case is almost literally identical with the petition in the case of Robert Triplett Yeaman et al. v. Galveston City Co. et al., 173 S. W. 489, where a full statement thereof is made; the only changes being such as were necessary in view of the fact that this suit involves only one share, whereas that suit involved five, and this suit is, of course, brought by different parties. We believe, however, that a brief history of the Galveston City Company would be helpful to a clearer understanding of the issues involved and of the grounds of our decision:

"In 1836, the Congress of the Republic of Texas authorized the sale to M. B. Menard and associates of the league and labor of land on the east end of Galveston Island, upon the payment by Menard of $50,000. The associates of Menard were nine persons and did not include Robert Triplett, Neblett, Gray, or Green. On June 15, 1837, Menard, joined by Triplett, Neblett, and Gray, conveyed said land to Johnson, Jones, and Green as trustees, authorizing said trustees to issue 1,000 shares to be evidenced by certificates, and to sell 600 of same at not less than $1,500 per share, and directing that 400 certificates that had previously been issued by Jones should be regarded as 400 of said 1,000 shares. Any two of the trustees were authorized to act. It is provided the land shall be held subject to the orders of the shareholders—any party in interest had the right to purchase shares to be charged up to such interest.

"The trustees had printed and bound in five books, lettered A, B, C, D, and E, a large number of blank certificates; there being in each of the Books A, B, C, and D, 200 certificates signed in blank by Green and Jones, trustees. Book E contained 210 blank certificates signed in blank by Johnson and Green, trustees.

"The trustees sold only 17 certificates (and these 17 were out of Book E and sold to one Coleman); they failed to sell any others. Failing to sell the certificates, Jones and Menard left Book E at Richmond, Va., in the hands of the trustees, Johnson and Green, for the Virginia interests, and returned to Galveston, and there divided the other certificates among Menard and his associates.

"On April 13, 1838, there was organized at Galveston an unincorporated association styled the Galveston City Company, it not now being known or ascertainable who participated in said organization, beyond the fact that M. B. Menard was elected president, and McKinney, Williams, Baker, and Hardin elected directors, and Levi Jones appointed secretary. Minutes of the meeting effecting this organization are preserved and held among the archives of defendant Galveston City Company. The trustees of 1839 conveyed said land to the officers of said unincorporated association styled Galveston City Company.

"The company laid out said land into town lots, the site of the city of Galveston, and adopted the policy of selling lots for credit, and accepted, in payment for lots and for debts, the trustees' certificates that had been issued by said trustees.

"The company issued certificates in the name of said company from time to time, accepting trustees' certificates (issued by the trustees, Jones, Green, and Johnson), in exchange for certificates of stock in the Galveston City Company.

"In December, 1838, the Galveston City Company passed a by-law declaring it the duty of the holders of trustees' certificates issued by the trustees, Green, Jones, and Johnson, to surrender same and take out in lieu thereof a certificate in the name of the company, stating the number of shares to which the party was entitled.

"On February 5, 1841, the Congress of Texas, incorporated the 'stockholders of the Galveston City Company,' 'under the same name and style.' The corporation thus created continued to operate with the same officers and on the same plan and method that existed prior to incorporation.

"In 1838, Menard, having paid the $50,000, received a grant of land from the Republic of Texas, and in 1842 Menard conveyed said land to the corporation."

The case was submitted to the jury upon a single special issue, viz.:

"Was Thomas Green the owner of trustees' certificate E—70 at the time of his death in 1883? If you so believe from a preponderance of all the evidence, you will answer, 'Yes'; otherwise, you will answer, 'No.'"

The jury answered in the negative, and thereupon the court rendered judgment upon said answer in favor of the appellees, and from this judgment the appellants have appealed.

It is obvious that in submitting the special issue the court necessarily assumed that the evidence established that Thomas Green was the original owner of trustees' certificate E—70; and, without setting out any of the evidence bearing upon his original ownership, we will, for the purpose of this opinion, assume the same thing.

Appellant's first, second, third, and fourth assignments of error complain of the refusal of the court to grant their request for a peremptory instruction in favor of the plaintiffs, such request being based upon the contention that the undisputed evidence established the right of plaintiffs to recover. The main contention of appellants is presented in the fourth proposition under these assignments, which is as follows:

"While a sale of property may be proven by circumstantial evidence and while, under some circumstances, such a sale or conveyance will be presumed, the law is that a sale or conveyance will not be presumed or inferred from circumstances which fail to show that any person, other than the person in whom the title is shown, has ever claimed the property under and by virtue of any such sale or conveyance. In other words, a sale or conveyance will be presumed or inferred only to support an actual claim, and, where there is no evidence showing any claim of the property by any other person, necessarily the law will not infer or presume, or permit a jury to infer or presume, a sale or transfer to any other person."

Under the thirteenth assignment, the contention is made by appellants that, unless the jury was able to say from the evidence to whom Thomas Green had transferred the certificate, then they were not authorized to find that he had transferred it, for the reason that, "where title to property is once shown in a given person, his title can only be divested or affected by showing that he had disposed of it to some other person, and, if the evidence offered to show such disposition does not show to what person he has disposed of it, it is insufficient in law to show a disposition of the property," and in support of their contention cite the Texas cases of Baldwin v. Goldfrank, 88 Tex. 249, 31 S. W. 1064, and Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033.

[1] For the purpose of this opinion we will assume, as heretofore stated, that Thomas Green was the original owner of the certificate of stock in question, and further that the books of the company do not specifically show that it had ever been surrendered to the company, as was allowable under its rules and regulations, nor that it was canceled upon its books. The evidence does not show the name of the transferee of the certificate, if it was in fact transferred by Thomas Green. There is, however, a great mass of evidence tending to raise the issue that Green had sold or otherwise disposed of the certificate, which, under the laws of the company, could have been transferred by simple indorsement and delivery, and that he was not the owner of it at the time of his death in 1883; and, in deference to the verdict of the jury, we find that the jury were warranted in finding from the evidence, in answer to the special issue submitted to them, that Thomas Green was not the owner of certificate E—70 at the time of his death in 1883. To set out the evidence upon which this conclusion rests would extend this opinion beyond reasonable bounds, and indeed is unnecessary, in view of the appellants' contentions, as we understand them to be, not that the evidence did not raise the issue of sale or other disposition vel non, but that it was legally insufficient in the absence of evidence to prove to whom the certificate was sold or otherwise disposed of and in the absence of proof of an assertion of claim of ownership by some other person.

In Condit v. Galveston City Co., 186 S. W. 402, this identical question of law was presented to and overruled by this court, and we see no reason now for receding from that ruling, but upon the authorities and reasoning there given we are constrained to again rule as in the case cited.

[2] But we think there is evidence from which the jury might have concluded that the share in question had been taken up by the company had that issue been submitted to them. The trustees had printed and bound in five books, lettered A, B, C, D, and E, a large number of blank trustees' certifi-

cates, there being in each of the Books A, B, C, and D, 200 certificates signed in blank by the trustees. Book E contained 210 certificates signed by the trustees. All the certificates in Books A, B, C, and D were issued and were afterwards taken up, some by the company before incorporation and some afterwards, thus making 800 issued and taken up, some of them being sunk in the property of the organization and some surrendered for renewal certificates.

[3] The plaintiffs alleged—and by their allegations they must be bound—that there were 991 of such trustees' certificates so taken up by the organization, and this allegation was introduced in evidence by defendants as an admission against interest. There was evidence tending to show that, of the 210 blank certificates in Book E, but 190 appear to have been issued, thus making the total number of trustees' certificates issued 990. From this the jury could reasonably have found, had the issue been submitted, that as but 990 certificates had ever been issued, and as by the admission of the plaintiffs 991 of such certificates had been taken up by the company, the certificate in question was one of these, and therefore could not be outstanding.

The assignments referred to, as well as the various propositions thereunder, are overruled.

Under the fifth and sixth assignments, which sufficiently raise the point, appellants advance the proposition that:

"The evidence showing without dispute the issuance of the stock to Thomas Green, and it being outstanding on the corporate records in his name, and there being no evidence of any adverse claim to the share since its issuance, and, under the law, the defendant company being a trustee for Thomas Green, its shareholder, and in privity with his title, it was not entitled to assert a mere outstanding transfer as an absolute defense, but only as a basis for protection, to be awarded by the court upon equitable terms by way of requiring an indemnity bond or otherwise."

[4-6] We fail to see any merit in this contention. It is true that in certain circumstances the continuance of the relation of shareholder may be presumed when it is shown to have once existed, but this presumption, like any other presumption, may be rebutted by competent evidence, especially in cases where, under the rules and regulations of the company issuing the stock, the stock could be transferred by the owner and the title passed by mere indorsement and delivery. It is also true that a corporation stands in the relation of trustee to the owners of its stock; but this applies to the true owner, and not merely and only to those who from the records of the corporation appear to be stockholders. It is clearly the duty of the corporation as such trustee, we think, when sued by one claiming to be the owner of its stock and entitled to dividends and other rights and privileges of a stockholder, but who is not in fact a stockholder at the time he brings the suit, to defend in favor of the real owner of the stock, whether his identity be known or unknown. Surely it cannot be the law, as contended by appellants, that, because the books fail to show that a transfer had been made by the original shareholder, the corporation, although satisfied that the original owner had parted with the title to his stock, cannot defend in favor of the true owner, whoever he may be, but may prove an outstanding title only as a basis for protection to be awarded by the court by way of requiring an indemnity bond. None of the authorities cited by appellants sustain their contention. The assignment is overruled.

[7] The appellants complain in the seventh assignment that the court erred in submitting to the jury the special issue:

"Was Thomas Green the owner of trustees' certificate E—70 at the time of his death in 1883? If you so believe from a preponderance of all the evidence, you will answer, 'Yes'; otherwise you will answer, 'No.'"

The gravamen of the complaint is that the court by this charge (a) placed the burden of proof on the plaintiffs to show that Thomas Green owned the stock at the time of his death, and (b) that the jury could not have interpreted the charge as meaning anything other than that the burden rested upon the plaintiffs to prove affirmatively by a preponderance of the evidence that the stock had not been transferred or surrendered by Thomas Green.

We overrule these contentions. Clearly, the charge did not place the burden of proof upon either party, but required the jury to ascertain the fact inquired about from the preponderance of all the testimony. It is inconceivable that the jury could have construed the charge to mean that the burden rested upon the plaintiffs to affirmatively prove by a preponderance of the evidence that the stock had not been transferred or surrendered by Green. The assignment is overruled.

All other assignments of error urged by appellants present different phases of the questions hereinbefore discussed, and are sufficiently disposed of by what has been said above. We have given careful consideration to each of them and have concluded that none of them points out reversible error, and they are severally overruled.

We find no reversible error in the record, and the judgment of the court below is therefore affirmed.

Affirmed.