LIDA D. HODGES ET AL. v. F. S. ROBBINS ET AL.

Decided March 15, 1900.

**1.   Judgment—Defective Entry—Sale of Land Under, Sustained.**

In the caption of a judgment entry, and in the execution issued thereon, both husband and wife were named as defendants. The execution was levied on land of the wife, and under a venditioni exponas it was sold as her property, and the sheriff's deed conveyed it as such. She appeared to have acquiesced in the adverse occupancy of the land under the judgment until her death, twelve years later. The other papers in the case were lost, and their contents not shown. The judgment entry, aside from the caption, did not show the names of the defendants, and was in terms against "the defendant," in the singular only. Held, that it was not void for uncertainty, and that the sale thereunder of the lands of the wife as a party to it should be upheld.

**2.   Limitations—Actual Possession.**

For evidence held, on rehearing, as not sufficient to show continuous possession under the ten years statute of limitations, see the opinion.

**3.   Same—Possession Limited to 160 Acres, When.**

Title by limitations to a tract of 553 acres can not be acquired where only a few acres of the land were inclosed, since the statute provides that unless the possession is under a written muniment of title duly registered, and defining the boundaries, the possession will not extend beyond 160 acres. Rev. Stats., art. 3344.

APPEAL from Matagorda. Tried below before Hon. WELLS THOMPSON.

*G. P. Dougherty,* for appellants.

*Bryan & Munson,* for appellees.

GARRETT, CHIEF JUSTICE.—This action was begun in the court below September 17, 1897, by the appellant, Lida D. Hodges and her husband, J. F. Hodges, to recover of the appellee, F. S. Robbins, an undivided one-half of the lower one-fourth of the C. H. Vandeveer league of land situated in Matagorda County. The other appellees were vouched as warrantors. Appellant Lida D. Hodges is an heir of Eliza Horton, who died intestate January 26, 1881. The only heirs left by Eliza Horton were her son, R. J. Horton, and the appellant, who showed herself entitled to recover the land in controversy unless defeated by the facts put in evidence by the appellee Robbins. These facts tend to establish two defenses, to wit, ·(1) title in Robbins through a sale of the land under execution against Eliza Horton in her lifetime, and (2) title by limitation.

1. A judgment was rendered in the County Court of Wharton County, Texas, August 4, 1868, as follows:

"Baldize Ryman,
    "No. 37.
"R. J. Horton,      This day came the plaintiff, by his attorney, and
"Eliza Horton.      the defendant, though duly cited, came not, but made default, and it appearing to the court that plff's cause of action is liquidated and proven by note filed: thereupon ordered the clerk to assess the damages, and they are assessed at the sum of six hundred and twenty and 16-100 dollars, with ———. It is therefore ordered by the court that the plaintiff do have and recover of defendant the sum of six hundred and twenty and 16-100 dollars, and all costs of suit. This judgment to bear interest at the rate of ten per cent per annum until paid, for which execution may issue."

In the copy of the judgment as set out in the transcript, "No. 37" appears between Baldize Ryman and R. J. and Eliza Horton, but in the bill of exceptions reserved to the admission of the judgment in evidence, and in the testimony of the county clerk, the style of the case is given as "Baldize Ryman vs. R. J. Horton and Eliza Horton." An alias writ of execution was issued upon this judgment upon February 12, 1869, against R. J. Horton and Eliza Horton in due form, addressed to the sheriff of Matagorda County, and the return of the writ shows a levy upon the land in controversy on March 10, 1869, as the property of the defendant Eliza Horton. A writ of venditioni exponas was issued April 26, 1869, to the sheriff of Matagorda County commanding him to sell the land levied upon by virtue of the writ of execution issued February 12, 1869, and the sheriff's return on the writ shows a sale of the land, as the property of Eliza Horton, on May 4, 1869, by virtue of the writ, to M. E. Layton. The sheriff executed a deed conveying the land by virtue of the sale under the venditioni exponas to the purchaser. Appellee deraigned title by mesne conveyances from the purchaser at sheriff's sale. M. E. Layton was the wife of Fletcher Layton. She

and her husband immediately after the sale went into possession of the land, built a dwelling house and other improvements thereon, and occupied it from about June 1, 1869, until 1878, and it was continuously occupied by them and those claiming under them to within probably less than a year of the date of the death of Eliza Horton. It was shown by the evidence of the county clerk of Matagorda County that the papers in the case of Baldize Ryman v. R. J. Horton and Eliza Horton had been lost, except the alias writ of execution and the writ of venditioni exponas above mentioned; and that the only parts of the record in said cause that could be found were the judgment above set out and the two writs. It appeared that a number of papers in cases disposed of in the years 1867, 1868, 1869, and 1870 had been lost.

2. Appellant Lida D. Hodges was born November 26, 1874, and was married to the appellant J. F. Hodges February 20, 1894. As stated above, Eliza Horton died January 26, 1881. Layton and wife entered into possession of the land about June 1, 1869, and built a dwelling house thereon, made cow pens and inclosed a garden. They occupied the land as their home until 1878, when they moved onto another tract, and a man by the name of Herndon moved onto the land in controversy as their tenant until they conveyed it; on July 1, 1878, to A. H. and J. E. Pierce. Payment of taxes by the Laytons was shown, but it was not shown that the deed from the sheriff to M. E. Layton was ever recorded in Matagorda County. After the sale by M. E. Layton and her husband to the Pierces, Herndon continued to occupy the land until, as the witness Savage expressed it, "1879 or 1880, or possibly later. I don't know that there was continuous possession of the land during these years, as I was not on the land every year. I don't know what kind of possession there was of the land. I only know there was a house and also a garden on the land, and that the Laytons occupied the house until Herndon moved into it." The Pierces sold the land to C. M. T. Robbins, August 31, 1882, and she conveyed it to her son, the appellee F. S. Robbins, November 9, 1889. When Mrs. Robbins bought the land the appellee immediately inclosed it with a good and substantial fence. All taxes were paid on the land from 1869 down to the institution of the suit, by the several parties claiming through the sheriff's sale.

Appellants contend that the judgment through which appellee Robbins claims title is not a judgment against Eliza Horton, and is void for uncertainty. The caption of the judgment entry may be looked to in order to ascertain who are the parties to the suit, and for and against whom the judgment was rendered. When ambiguous, a judgment must be read in the light of the entire record. Little v. Birdwell, 27 Texas, 688; Dunlap v. Sutherlin, 63 Texas, 42; Smith v. Chenault, 48 Texas, 455; Hays v. Yarbrough, 21 Texas, 487; Flack v. Andrews, 86 Ala., 450; Freem. on Judg., secs. 45, 50, 50a.

The papers in the suit of Baldize Ryman v. R. J. Horton and Eliza Horton were lost, except the two writs of execution under which the land

was sold, and parol evidence was admissible to show what the pleadings contained. There was no direct evidence of their contents, but from the conduct of Eliza Horton in permitting the land to be sold and adversely occupied for nearly twelve years prior to her death, with no assertion of title by her, there is strong presumptive evidence that she was a party to the suit, and that she knew that judgment had been rendered against her. This, taken in connection with the caption of the judgment and the facts that the writ of execution issued within a few months after the judgment was rendered, and ran against both R. J. Horton and Eliza Horton, and was levied, as shown by the returns, upon the land of the defendant Eliza Horton, and the venditioni exponas showing a sale of the land as the property of Eliza Horton, also the sheriff's deed conveying the land, show with reasonable certainty that the judgment was against both R. J. Horton and Eliza Horton.

As Mr. Freeman says, the cases upon the sufficiency of various entries of judgments are not altogether consistent. Appellant has cited the following cases to show the invalidity of the judgment: Perrill v. Kaufman, 72 Texas, 214; Harwood v. Wylie, 70 Texas, 538; McCormick Harvesting Co. v. Wesson, 41 S. W. Rep., 725; Sherman v. Palmer, 37 Mich., 509; Thomas v. Holcombe, 7 Ire. (Law), 445; Koechlept v. Hook, 10 Md., 173. But an analysis of these cases, except the Maryland case, which we have not been able to see, proves them to be of little value in the construction of the judgment in the present case. The first two cited are not at all analogous, and in the third it was shown that the judgment entry had been changed after its rendition, and that Wesson had not in fact been served with process. The entry in the Michigan case did not undertake to render judgment in favor of anyone against anyone. The case from Iredell showed from the record that it was intended only as a judgment against one. The following cases will be found to be more directly in point: Turner v. City of Houston, 43 S. W. Rep., 69; Roach v. Blakely (Va.), 17 S. E. Rep., 228; Meyers v. Hammond, 6 Baxt. (Tenn.), 61; Hofferbert v. Klinhardt, 58 Ill., 450. In each of these cases the word defendant was written when, as the judgment was construed, defendants was intended and would be so read.

Upon the question of limitation Herndon must be regarded as the tenant at will of the Pierces during his occupancy after they bought the land from the Laytons. Brownson v. Scanlan, 59 Texas, 227. As no record of the deed from the sheriff to M. E. Layton in Matagorda County was shown, the statute of five years limitation does not apply. The proof is not clear as to how long Herndon continued to occupy the land, but he occupied it probably until after 1880. There was a dwelling house on the land, and a garden inclosed, and cow pens built thereon, and the character of the possession of Herndon was such as to inure to the benefit of the owners of the land under the conveyance from the Laytons. The statute of limitations commenced to run against Eliza Horton on March 30, 1870. Rev. Stats., art. 3366. It was shown that the

Laytons occupied the land as a home continuously from June 1, 1869, until about January 1, 1878, when they moved off and Herndon moved into the house, and was on the land as their tenant when they sold to the Pierces. It was shown with reasonable certainty that Herndon continued in possession until after March 30, 1880. Hence we conclude that the appellee showed title also by the statute of ten years limitation.

The judgment of the court below will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

Upon a reconsideration of this case on appellants' motion for a rehearing we have concluded that the evidence was not sufficient to show title to the land by limitation. Even if it be conceded that Herndon held as the tenant of the Pierces and in privity with them, the testimony of Savage, upon which the proof of possession by Herndon until March 30, 1880, depended, should not be regarded as sufficient to show that fact. Testifying to the facts to show limitations, he said: "Herndon moved into her (Mrs. Layton's) house on the Vandeveer, where he remained until 1879 or 1880, or possibly later. I don't know that there was continuous possession of the land during these years, as I was not on the land every year. I don't know what kind of possession there was of the land. I only know there was a house and also a garden on the land, and that the Laytons occupied the house until Herndon moved into it." He also testified that the Laytons moved on the land in 1869, built a house on it, and lived there until 1878. Possibly his statement that he was not on the land every year referred to all the time from 1869, but the evidence was not developed as fully as it should have been, and is too meager and unsatisfactory to show a continuous possession for ten years.

In holding, as we did, that title by limitation was sustained to the entire tract of 553 acres, when only a few acres of it was inclosed, we overlooked the requirement of the statute (Revised Statutes, article 3344) that the possession should be held under a written memorandum of title, duly registered, fixing the boundaries, in order to extend it beyond 160 acres. Before the adoption of the Revised Statutes of 1879 the law was otherwise. Craig v. Cartwright, 65 Texas, 413. Counsel for appellant insists that Herndon was only a tenant at will of M. E. Layton, and that when she sold the land to the Pierces there was then no privity of possession between Herndon and them, and that the statute did not run in their favor by reason of the latter's occupation after the sale; and it is claimed that the case of Brownson v. Scanlan, 59 Texas, 222, cited by this court in its opinion, is not pertinent to the facts of this case. The evidence does not show the character of Herndon's tenancy. In Brownson v. Scanlan, Rainwater testified that he went upon the land under permission from Mrs. Spurlock, who then claimed to own it. He made

improvements thereon. In 1870 Mrs. Spurlock conveyed it to Sollaballas. Rainwater tried to purchase the land from Sollaballas, but did not, because he asked too much. He continued in possession of his improvements until 1872 or 1873, when he made an agreement with Sollaballas to keep possession and pay the taxes. He held thus until he purchased from Richardson in 1874. It was not shown how long it was after the sale by Mrs. Spurlock to Sollaballas that Rainwater made the endeavor to purchase the land from him, but it does appear that it was not until 1872 or 1873 that the contract of tenancy was made. The question, however, becomes immaterial in view of our present holding as to limitation. The change in our finding as to limitation does not require a reversal of the judgment, since we hold that the execution sale vested title in M. E. Layton.

The motion for a rehearing will be overruled.

*Overruled.*

Writ of error refused.