B. H. EPPERSON ET AL. v. PAUL REEVES ET AL,

Decided March 9, 1904,

**1.—Will—Construction—Independent Executors—Filing Report.**

The provision of a will empowering executors to act independently of orders or interference from the probate court was not invalidated by a further provision that the executors should file, from year to year, with the probate court a report showing the condition of the estate, especially where it is expressly stated that the purpose of the filing of this report is that it may be seen by creditors and heirs.

**2.—Revised Statutes—Constitution—Not in Conflict.**

Article 1996, Revised Statutes, allowing suits and executions against the estates of decedents, is not in conflict with article 5, section 16, of the State Constitution, conferring on county courts general jurisdiction over probate matters.

Appeal from the District Court of Red River. Tried below before Hon. Ben. H. Denton.

*Smith & Beaty,* for appellants.

*Lenox & Lenox* and *Chambers, Doak & Kennedy,* for appellee.

JAMES, CHIEF JUSTICE.—Appellant Jamie Epperson it appears is entitled to recover an interest in the tract of land in controversy situated in Red River County, unless deprived of that right by the sheriff's deed hereinafter mentioned. The will of her father, B. H. Epperson, appointed executors, J. P. Russell and his son R. P. Epperson, with the following powers:

"Item 3. I desire that the debts due by me shall be paid as early as practical, consistent with the interest of all parties concerned, and to this end I provide that my executors shall be authorized to sell any real or personal property upon time or for cash, as they may deem expedient, for the purpose of the payment of the said debts, and I hereby authorize them to do so, or such of them as may accept this trust and may be acting as such at the time, and declare their conveyance shall be as effectual as any made by myself could be in my lifetime.

"Item 4. I hereby appoint J. P. Russell and my son, R. P. Epperson, as my general executors, to have control and management of all my estate except the property in Brazoria County, consisting of what is known as the Darington plantation, and another tract of land, 2200 acres, headright of ——. Over all this, I appoint my son, E. S. Epperson, executor to manage and control the same according to a contract existing between him and myself. But he shall report from time to time the condition of said property to my general executors, and this arrangement shall continue for a period of five years from my death, when the said J. P. Russell, R. P. Epperson and E. S. Epperson shall all be general executors of my whole estate, and in case of the death of either one or the refusal to accept and act, then my wife is to be substituted in his place,

provided she then be unmarried, and in case of her marriage afterwards, then she is to cease to have any right to act as executrix, and the remaining or surviving ones shall be invested with full power as are all. The object of appointing E. S. Epperson special executor to manage the property in Brazoria County is that he may make the said property pay the said debts incurred for it, and thus become entitled to one-fourth of it as provided in the contract with him, and that he may carry on the said plantation he shall be fully authorized to pledge the crops or any personal property in his possession for the necessary money to carry on the same, and he is for this purpose invested with the same authority that I would have in my lifetime to do, or anything else necessary to raise money, but if he should choose to abandon the said contract, he is authorized to do so and then become one of the executors, as it is provided for him to be at the end of the five years. It is my intention and desire that the proceeds arising from the said plantation in Brazoria County be appropriated to the payment of the debts incurred for its purchase and in its management, and to this end I have made the said E. S. Epperson executor and manager of the same, but in case of his refusal to act or death or resignation, then my said executors will take charge of the said property as if he had not been mentioned, and will manage the same as herein directed to the end that the same may be made to pay the debts incurred on its account if possible, but if this can not be done, then my said executors shall have the right to dispose of the same at discretion as they have all my other property.

"Item 5. I appoint my wife guardian of my minor children, of their person and property, so long as she remains unmarried, and declare that she shall not be requested to give bond, but to report from time to time to the court the condition of the estate of the said minors. But in case of her marriage, then she is to give bond as other guardians are required to do.

"Item 6. I hereby provide that my executors shall not be required to give any security, nor shall they be required to procure any orders from the county court or any other court for the management of my estate, but they shall manage the same without any interference of the court, except that they shall have this will probated and shall file an inventory of the property which comes to their hands as executors, and from year to year a report showing the condition of the estate, which may be seen by creditors and heirs. And as I have had to pay a very large sum of money for John N. Norris, as security, and have had to buy his property when it was sold by the trustee, I desire that my executors carry out the arrangement made with him, by which he is to redeem the said property by the payment of the said sums of money to my estate, and I advise the waiting with him a period of five years if necessary. I regard time as of importance in settling my estate, because it is impossible to realize upon property now, and I advise my

executors to get all the time they can to pay debts, and to settle the same with property, whenever possible."

The propositions of law upon which she relies to reverse the judgment against her are: (1) "The will of B. H. Epperson was not such as would withdraw his estate from the control and supervision of the probate court, because the testator did not say that no other action should be had in the county court in relation to the settlement of his estate than the probating and recording of his will, and the return of an inventory, appraisement and list of claims, the provision that the statute makes essential, but said merely that the executors should not be required to procure any orders from the county court for the management of his estate but should manage the same without any interference of the court, except that they should have the will probated and file an inventory of the property and from year to year a report showing the condition of the estate, which might be seen by creditors and heirs. Therefore the sheriff's sales were void. (2) "Article 1996, Revised Statutes, allowing suits and executions against the estates of decedents, violates article 5, section 16, of the State Constitution, and therefore these sheriff's sales were void."

The will was probated on October 2, 1878. The executors qualified and proceeded to act as such. E. S. Epperson died in November, 1881, and after that R. P. Epperson and J. P. Russell acted as sole executors. Numerous suits were brought, and judgments obtained against them as such executors in 1880 and 1881, which directed execution to issue against the property of the estate in the hands of said executors as provided by statute. Executions were duly issued accordingly and the land in question was regularly sold to David Rainey and John A. Bagley. For a deed under one judgment they paid $17.26, under another $22.20, under another $250, and under another $4.44. The land contained 444 acres and was then worth $5 an acre, and is now worth $35 an acre. The defendants hold regularly under said purchasers. The statement of facts recites that the judgments and sales were regular and sufficient to pass the title to said land unless the will was insufficient to withdraw the estate from the probate court and to authorize execution to run against the property, or unless the statutes authorizing such proceedings as were had be unconstitutional and void. No proceedings were had in the probate court establishing said claims or authorizing or approving the sales. Other tracts aggregating many thousands of acres were sold as this one was, and finally, long after these sales, said executors were removed and an administrator de bonis non was appointed, who on August 7, 1889, was finally discharged and the administration closed.

The above together with the portion of the will quoted are all the facts necessary to a decision of the questions presented on this appeal.

The recital in the statement of facts that said judgments and sales were regular and sufficient to pass the title of said estate unless for the

questions of law mentioned, requires us to assume that no question existed as to proper parties defendant in said suits at the time of the judgments.

The provision of the will empowering the executors to act in the management of his estate without the necessity of orders from the probate court, and without the interference of that court, was in our opinion sufficient authority for them to do what was necessary and proper in the settlement of his estate. The expression in a will, "management of my estate," ordinarily would mean to do that which necessity or advisability would dictate with a view to a settlement thereof. The terms of this will, however, leave no doubt as to the testator's intention to commit to his executors more than the mere managing or controlling of his property according to any restricted meaning of such terms. He expected them to settle his debts, to dispose of his property to settle same, and to that end, expressly authorized them to sell property, and even to pay debts with property, and his intention is clear that they were to act in all matters affecting the administration of his estate independently of any action of the court.

Appellant insists that all action of the probate court was not dispensed with in reference to the estate, and the estate not withdrawn in the meaning of the statute, because the will directed the excutors to file a report from year to year showing the condition of the estate which may be seen by creditors and heirs. This in our opinion was not intended as any restriction on the exercise of the powers granted to the executors, not as intended to give the court supervision over the acts of the executors in the administration of the estate, and this being so the powers of the executors were as ample with this provision in the will as without it. Besides, the provision expressly states the purpose of its filing to be that it may be seen by creditors and heirs, and did not contemplate that it should be audited by the court and the acts of the executors embodied in it approved or disapproved. If such a construction were given this provision, it would entirely defeat the discretion which the testator conferred on his executors in plain terms. It is evident that this was his idea in reference to keeping the heirs and creditors informed periodically of what had been done by his executors, and that he did not intend thereby that the court should act upon such report and thereby supervise or revise their proceedings.

We conclude that the will comes within the provision of article 1995, Sayles' Revised Statutes, and that this was what is commonly known as an independent administration.

The second proposition can not be sustained. The question, being a constitutional one, and in its nature fundamental, it is strange, if it has any merit whatever, that our courts have uniformly acted upon the contrary view—not even discussing it—in passing on questions arising under this statute for so long a time. We feel under such circumstances that a discussion of the question is hardly justified. The constitutional

provision is that "the county court shall have the general jurisdiction of a probate court; they shall   *   *   *   grant letters testamentary and of administration; settle accounts of executors; transact all business appertaining to deceased persons   *   *   *   including the settlement, partition and distribution of estates of deceased persons." Appellant's counsel disowns making any contention that this provision of the organic law would be in the way of an independent administration where the acts done in such an administration are those only of the executors. The point made is that the statute (Sayles' Rev. Stats., art. 1996) authorizes the property of the estate to be disposed of through proceedings of other courts than the probate court, and in this instance the sales were involuntary as far as the executors were concerned and were in fact proceedings in the settlement of the estate had under the judgment orders of other courts than the one to which the Constitution has given exclusive jurisdiction in the settlement of estates.

We had the same constitutional provision in substance in the Constitution of 1845, and each subsequent one. See Paschal's Dig., pp. 58, 59; 2 Pasch. Dig., p. 1115, where probate jurisdiction was vested exclusively in the district courts; and the present Constitution, art. 5, sec. 16. In 1862 express provision was for the first time made for execution sales of the property of estates in the hands of an independent executor. 1 Pasch. Dig., art. 1371. Since that time our courts have uniformly sustained sales so made. Such being the well settled construction or effect attached to substantially similar constitutional provisions by the courts of the State, when the present Constitution was adopted in 1876, it must be presumed that the convention readopted it with the construction that had then been given it.

It seems to us that the question here raised would apply with the same force to the whole system of independent administration. If the contention were sound, then as to such administrations no real difference would seem to exist that is based on a distinction between voluntary acts of such an executor disposing of property and involuntary sales under execution.

Lest that part of our opinion holding that by the terms of the will it was not contemplated that the yearly reports of the executors should be approved or rejected by the court, may be construed to mean that if such action by the court had been permitted by the will the independent character of the executorship would have been destroyed, we deem it well to add that, in our opinion, if such power had been left with the court the independent character of the executorship in other respects would not have been disturbed. The statute does not restrict the matters pertaining to the estate that may be left in the hands of the county court by the terms of a will, but merely designate those matters that can not be dispensed with by a will.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.