## DUNN et al. v. EPPERSON et al.
### (No. 1375.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 18, 1915. On Appellants' First Motion for Rehearing, March 11, 1915. On Appellants' Second Motion for Rehearing, April 22, 1915.)

1. EVIDENCE ⟨⟩318—HEARSAY—RECITALS IN DEED.

Where the .title of one T. was an essential link in plaintiffs' chain of title, better evidence being unavailable, recitals that T. owned the land in a proof of loss of a land certificate filed with the General Land Commissioner and in a

transfer of such lost certificate to one P. were admissible to prove the fact that T. claimed ownership, a general exception to the rule against hearsay, and where the court heard the case without a jury, the presumption being that the evidence was considered only in its legitimate aspect, the inadmissibility of such recitals to prove the fact of T.'s ownership of the land certificate furnished no ground for reversal.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1193–1200; Dec. Dig. ☞318.]

2. EVIDENCE ☞318 — HEARSAY ADMISSIBLE UNDER THE FACTS.

Where proof of loss of a land certificate was made in 1848, and its transfer by plaintiffs' predecessor in title to one P. in 1851, where the proof of loss was filed in the General Land Office when or before a duplicate certificate was issued, where the deed to P. was recorded in the county where land had been surveyed under the duplicate certificate, where all the records of the county where the land in controversy was situated had been destroyed by fire, where plaintiffs had continually asserted title to the certificate and to the land located under it, and where no one else had asserted title either to land or certificate until a few years before suit, recitals, in the proof of loss of land certificate and in transfer to P. by plaintiffs' predecessor in title, that he owned the original lost certificate to the land, were admissible in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1193–1200; Dec. Dig. ☞318.]

3. APPEAL AND ERROR ☞1051 — HARMLESS ERROR—EVIDENCE—FACT ESTABLISHED.

Where other testimony was sufficient to warrant an inference that plaintiffs' predecessor in title had acquired the owner's title, judgment was not reversed for errors in admitting certain documentary evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. ☞1051.]

4. TRESPASS TO TRY TITLE ☞41 — TITLE — SUFFICIENCY OF EVIDENCE.

Evidence held sufficient to show that plaintiffs' predecessor in title owned land in controversy.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. ☞41.]

5. VENDOR AND PURCHASER ☞105—RESCISSION—WILD LANDS—RECOVERY OF RENT.

Where land in controversy had been used as pasturage for 700 or 800 head of horses, had been fenced, and 100 acres cleared and 36 acres cultivated, it was not so wild, unproductive, and without rental value that the vendor upon rescission of the contract could not recover its rental value.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 183–187; Dec. Dig. ☞105.]

6. TRESPASS TO TRY TITLE ☞41 — TITLE — SUFFICIENCY OF EVIDENCE.

Evidence held sufficient to show title in predecessor in title of plaintiffs' remote grantor.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. ☞41.]

On Appellants' First Motion for Rehearing.

7. APPEAL AND ERROR ☞754.— ASSIGNMENT OF ERROR—NECESSITY.

Where no error was assigned to the action of the court in excluding a deed from evidence, the bill of exceptions on the point should not have been made part of the record and was not entitled to be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3086–3089; Dec. Dig. ☞754.]

8. APPEAL AND ERROR ☞754 — REVIEW — WAIVER OF ERROR.

Under rule 24 for the government of Courts of Civil Appeals (142 S. W. xii), where appellants failed to assign error to the exclusion of evidence, they technically acquiesced in the ruling of the trial court and waived any right to complain.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3086–3089; Dec. Dig. ☞754.]

9. APPEAL AND ERROR ☞1170 — HARMLESS ERROR—RULE OF COURT.

Where the sheriff's deed which it was error to exclude from evidence could not have served to establish anything but an imperfect title in appellants, in an action to quiet title and recover possession of land under rule of court 62a (149 S. W. x), declaring that no judgment shall be reversed on appeal, unless the error complained of probably caused the rendition of an improper judgment, such exclusion was not ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540–4545; Dec. Dig. ☞1170.]

10. TRESPASS TO TRY TITLE ☞53 — WILD LANDS—RECOVERY OF RENTS—SUFFICIENCY OF EVIDENCE.

Evidence held insufficient to show that land in controversy was so productive when certain defendants bought from another defendant as to enable plaintiffs to recover rental value on such land during the term of their dispossession.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 85, 86; Dec. Dig. ☞53.]

11. TRESPASS TO TRY TITLE ☞53—RECOVERY OF RENTS.

In an action to recover possession, plaintiffs could not recover rental value of the land unless land was not wild but productive.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 85, 86; Dec. Dig. ☞53.]

12. VENDOR AND PURCHASER ☞341 — WILD LAND—RECOVERY OF INTEREST.

Where F. J. and S., codefendants with D. in an action to recover possession of land, had purchased from D., if they were not liable to the plaintiffs, owners of the land, for its rental value during the time they had been in possession, D. is not liable to them for interest on the purchase money paid.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1008–1017; Dec. Dig. ☞341.]

13. APPEAL AND ERROR ☞1149—REFORMATION OF JUDGMENT.

A judgment that can be corrected in the appellate court will not be remanded.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4483–4496; Dec. Dig. ☞1149.]

On Appellants' Second Motion for Rehearing.

14. APPEAL AND ERROR ☞1170—HARMLESS ERROR — EXCLUSION OF EVIDENCE — JUDGMENT—RULE OF COURT.

In trespass to try title, where defendants offered in evidence against plaintiffs a judgment and sheriff's deed thereunder as tending to show title in their predecessor, although they did not offer to prove that the land had been sold under such judgment, its exclusion, if otherwise admis-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

sible, was ground for reversal under rule of court 62a (149 S. W. x), declaring that no judgment shall be reversed on appeal unless the error complained of was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540–4545; Dec. Dig. ☞1170.]

15. APPEAL AND ERROR ☞754 — REVIEW — WAIVER OF ERROR.

In trespass to try title, where appellants failed to assign error to the exclusion from evidence of a sheriff's deed given under a judgment, although they technically acquiesced in the ruling of the court, that such was not their attitude in fact was sufficiently shown by the brief of the adverse party.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3086–3089; Dec. Dig. ☞ 754.]

16. JUDGMENT ☞130—PROCESS TO SUPPORT —ADMISSIBILITY—JOINT PARTIES.

In trespass to try title, a judgment in a suit against plaintiffs, offered in evidence by defendants as tending to show title in. their predecessor, was not inadmissible because reciting "that the defendant was duly served with notice of the pendency of this suit," although it appeared therefrom that it was by default against three persons; a notation that the citation had been "returned executed" sufficiently showing .that it had been executed as to each of the defendants, and that the use of the word "defendant" in the singular instead of the plural in the judgment was a clerical error.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 241, 242; Dec. Dig. ☞130.]

17. EXECUTORS AND ADMINISTRATORS ☞453 —ACTIONS—JUDGMENT—ADMISSIBILITY.

In trespass to try title, where defendants offered in evidence, as tending to show title in their predecessor, a judgment against plaintiffs, such judgment was not inadmissible in evidence, on the ground that it did not appear to be against plaintiffs in their representative capacity as executors, where it recited that "said plaintiff have and recover of the said defendants as such executors," they having been referred to above as executors, of the last will and testament of a named decedent, under Vernon's Sayles' Ann. Civ. St. 1914, art. 3362, authorizing an "independent administration," which was the character of the one in question, and article 3363, providing that any person having a debt may enforce payment by suit against the executor and when judgment is recovered against him the execution shall run against the estate of the testator in his hands made subject to such debt.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1884–1908; Dec. Dig. ☞453.]

Appeal from District Court, Titus County; H. F. O'Neal, Judge.

Action by B. H. Epperson and others against Gordon Dunn, one Yantis and others. Judgment for plaintiffs, and defendants appeal. Reversed and remanded as to all parties except defendant Yantis, and affirmed as to him.

The appellees, hereinafter referred to as plaintiffs, claiming, as the heirs of B. H. Epperson and his wife, Harriet A. Epperson, both deceased, to own 1,292 acres of the William Walker survey in Titus county, brought this suit to recover the title and possession thereof, and damages, against Gordon Dunn, E. L. Fee, G. R. Stewart, O. R. Jackson, Spill Brown, Mrs. Alice Brown, and Tom McLean. One Yantis, claiming that he owned the land, intervened in the suit; and the plaintiffs thereupon, by an amended petition, made him a party defendant.

The answers of Fee, Stewart, and Jackson to the petition of the plaintiffs and that of the intervener consisted of a general denial, pleas of not guilty, and the statute of limitations of five years, a suggestion of improvements made by them on the land in good faith, and a plea setting up that they had purchased the land of their codefendant Gordon Dunn, who had warranted the title, and asking a recovery against him on his warranty in the event plaintiffs or the intervener recovered against them.

The answer of Dunn to said petitions consisted, so far as necessary to state it, of a general denial, pleas of not guilty, and of the statute of limitations of five and ten years, so far as the plaintiffs and intervener sought to recover the land, and of the statute of limitations of two years, so far as they sought to recover damages.

.Spill Brown, Mrs. Alice Brown, and Tom McLean seem not to have made an answer to the suit.

It appeared from the testimony that the land was surveyed November 15, 1860, by virtue of certificate No. 1014/1113 for three-fourths of a league, issued by the Commissioner of the General Land Office December 14, 1848, to the "legal representatives of William Walker, deceased." Said certificate was issued as a duplicate of certificate No. 566 "issued by the board of land commissioners of Washington county to Wm. Walker, heir Nancy Walker," on proof made by one J. J. Tumlinson that said certificate No. 566 had been lost. The land was patented to the heirs of William Walker, deceased, March 29, 1871.

Plaintiffs claimed that said Tumlinson was the owner of said certificate No. 566, and, being unable to show the fact by direct evidence, they relied upon circumstances they adduced to prove it. It sufficiently appeared from the evidence that plaintiffs' ancestors, B. H. Epperson and his wife, by mesne conveyances, had acquired the title, if any, owned by Tumlinson.

Yantis claimed that certificate No. 1014/1113 was issued to William Walker as heir of Nancy Walker, deceased, and that he had acquired the title of said William Walker. As evidence of the fact that he had acquired that title, Yantis relied upon deeds purporting to convey the land as follows: (1) From William Walker to J. F. Walker, in trust to secure a debt due to F. E. Walker, wife of said J. F. Walker, dated June 27, 1886; (2) from William Walker to J. B. Walker, dated. February 7, 1887; (3) from J. B. Walker and from

J. N. Walker and wife and M. Ecke and wife, heirs, it seems, of said J. F. and F. E. Walker, to himself (Yantis), dated July 25, 1912.

Fee, Stewart, and Jackson, and Dunn as their vendor, claimed title under deeds as follows: (1) From Spartan Berry and Alice O. Martin, as the only heirs of William Walker, Jr., who it appears was a brother to a Nancy Walker, to L. N. Cole, dated September 9, 1901; (2) from said Cole to J. W. Thomas, dated September 20, 1901; and (3) from said Thomas to Dunn, dated May 4, 1903. It was agreed by the parties to the suit that the effect of the deeds specified and of the deed from Dunn to Fee, Stewart, and Jackson was to pass to the latter "all the title ever owned or held by Alice O. Martin and her husband, W. G. Martin, and Spartan Berry." Said Fee, Stewart, and Jackson also claimed title under mesne conveyances from one Gulie Hargrove, and it was agreed that they had acquired and held "all of the right, title, interest, and estate in and to the William Walker survey that was acquired by G. Hargrove by virtue of the sheriff's deed dated June 7, 1881." The sheriff's deed referred to is not a part of the record on this appeal.

The trial was before the court without a jury, and resulted in a judgment in favor of plaintiffs for the land as against all the other parties, and in favor of Fee, Stewart, and Jackson against Dunn on his warranty for $8,263.34. Dunn and Fee, Stewart, and Jackson by appeal, and Yantis by writ of error, have brought the cause to this court.

J. G. McGrady, of El Paso, Ward & Ward, J. S. Sherill, S. P. Pounders, and J. M. Burford, all of Mt. Pleasant, and R. N. Grisham, of Sweetwater, for appellants. Lenox & Lenox, of Clarksville, for appellees.

WILLSON, C. J. (after stating the facts as above). It is conceded by appellants Fee, Jackson, and Stewart in their brief, and not questioned by either of the other appellants, that, if Tumlinson acquired the title of Nancy Walker to the original certificate No. 566, the title to the land in controversy was in B. H. Epperson September 6, 1878, when he died. Plaintiffs were unable to show by direct evidence that Tumlinson had acquired that title, and undertook to prove the fact by circumstances. For this purpose plaintiffs offered and the court, over objections to portions thereof interposed by said appellants and appellant Dunn, hereinafter stated, admitted as evidence, documents as follows: (1) A certified copy from the General Land Office of the proof made by Tumlinson of the loss of the original certificate issued to Nancy Walker as heir of William Walker, to procure the issuance of the duplicate certificate. The proof consisted of (1) the certificate of one Stone, "printer and publisher Texian Advocate," dated April 15, 1848, showing that a notice by Tumlinson, as the

owner thereof, of the loss of "the headright of William Walker, number not recollected, for three-quarters of a league of land issued by the board of land commissioners for Washington county in August, 1836," had been published in the Victoria Advocate "for nine weeks from the 18th of November, 1846"; and (2) the affidavit of said Tumlinson, made November 3, 1848, "that he was the just and legal owner of the certificate issued to William Walker by" said board of land commissioners "for three-quarters of a league and labor of land, No. ———, dated in August, 1838, that he had never sold, alienated, or transferred the same in any manner, that it has been lost, and that since lost he has neither heard or known of the same." (2) A transfer, dated September 27, 1851, recorded in Red River county October 27, 1880, to Paschal from Tumlinson, in which he described the certificate thereby conveyed as follows:

"A land certificate for three-fourths of a league and one labor, it being originally the certificate No. 566 issued in the county of Washington to Nancy Walker as heir at law of William Walker, deceased, and transferred by her by chain of transfers to me."

Plaintiffs then proved by instruments recorded in Red River county said October 27, 1880, that Paschal transferred the certificate to Temple, who transferred it to Shugart, who transferred it to Morrill, who by a deed dated February 10, 1860, transferred it to said B. H. Epperson.

Plaintiffs further proved facts, among others, as follows: At the instance of said Epperson, surveys were made by virtue of the duplicate certificate as follows: In Titus county, in November, 1860, a survey of 8,055,188 square varas, and a survey of 7,301,109 square varas; the last-mentioned survey being the land in controversy here. And in Red River county, on Blossom Prairie, in May, 1867, a survey of 8,839,169 square varas. In a letter, dated July 21, 1870, to the Commissioner of the General Land Office, Epperson as the owner thereof abandoned the survey of 8,055,188 square varas made in Titus county, and on March 31, 1871, said commissioner issued and delivered to Epperson a certificate, No. 16/383, authorizing him to locate 12,448,892 square varas, as the part then unlocated of the duplicate certificate. Said certificate No. 16/383 seems to have been applied by Epperson to the survey of 8,839,169 square varas which had been made in 1867 by virtue of the duplicate certificate. In April, 1872, the Commissioner of the General Land Office issued and delivered to Epperson a certificate, No. 17/224, authorizing him to have 3,609,723 square varas surveyed as the balance then unlocated of said certificate No. 16/383. By virtue of said certificate No. 17/224, a survey of said quantity of land, to wit, 3,609,723 square varas, was made for Epperson in Red River county in November, 1874. The survey of 7,301,109 square varas in Titus

county, and the surveys of 8,839,169 and 3,609,723 square varas, respectively, in Red River county, together aggregated the amount of land specified in the duplicate certificate. Each of the three surveys was patented to the heirs of William Walker, deceased; the one in Titus county March 29, 1871, as hereinbefore stated, and those in Red River county April 18, 1872, and September 12, 1876, respectively. The patent on the survey in Titus county was delivered by the Commissioner of the General Land Office to Epperson at the time it was issued, and it was shown that the patents issued on the two surveys in Red River county were found after the death of said Epperson among papers belonging to him. During his lifetime Epperson subdivided the survey on Blossom Prairie, in Red River county, and sold parts of same to different parties. After his death the other parts of the survey were sold by his legal representatives. The deeds conveying the respective parts of said survey were all of record in Red River county as long ago as 1880. It seems that the purchasers of parts of said survey, at or about the dates of their respective purchases, took, and thereafterwards, either in person or by their vendees, continued in actual possession each of the part he had purchased, and paid taxes assessed against the same. No claim of title adverse to the title asserted by Epperson to said survey seems ever to have been made by any one. But it appeared that the purchasers of the parts of said survey, or their vendees, commenced and prosecuted in the district court of Red River county a suit against the unknown heirs of William Walker, deceased, and Nancy Walker, deceased, to remove cloud from their title to the land, and that the suit resulted in a judgment rendered May 31, 1888, awarding them the relief they sought. The land in controversy was inventoried as property belonging to said Epperson's estate after his death. It seems to have been overflow land and used only as a pasture until 1909, when appellant Dunn sold it to appellants Fee, Jackson, and Stewart; except that the testimony of the witness Susan Smith indicated that she and her first husband, Brad Welch, claiming under a sale of 192 acres thereof by Epperson to James Welch, Brad Welch's father, for many years lived on a part of said 192 acres. It was shown that the taxes on all but 200 or 300 acres of the land for the years 1874, 1875, and 1876 were assessed against Epperson, and there was testimony sufficient to support a finding that for many years after Morrill conveyed to Epperson it was known in the neighborhood as the "Epperson land," and that no other person than Epperson asserted a claim to any part of it except the 192 acres mentioned as having been claimed by Welch. In fact, it seems that no claim to any of the land surveyed by virtue of the duplicate and unlocated balance certificates

mentioned, other than the one asserted by Epperson and his vendees and heirs, was ever made by any one in any way prior to September, 1901, when Spartan Berry and Alice O. Martin, as the heirs of William Walker, Jr., brother to Nancy Walker, conveyed the survey in controversy to one Cole, whose title appellant Dunn acquired, except that in 1886 the William Walker under whom the appellant Yantis claimed conveyed it to a trustee to secure a debt he owed to one F. E. Walker.

[1, 2] It is insisted that the recitals in the proof of loss of the original certificate and in the transfer from Tumlinson to Paschal were inadmissible to prove that Tumlinson owned the original certificate, and that the other facts shown of themselves did not authorize a finding that Tumlinson owned said original certificate. It is not believed that either of the contentions should be sustained.

In the brief of the appellants Fee, Jackson, and Stewart it is conceded, and it is not denied by either of the other appellants, that the proof of loss was admissible for the purpose of showing the regularity of the issuance of the duplicate certificate. As we think this admission should be construed as an abandonment of the contention that the proof of loss was irregular and not an archive of the General Land Office, the objection to it on those grounds will not be considered. The other grounds of the objection had reference to recitals in the proof of loss and were the same as those urged to the admissibility of recitals in the transfer from Tumlinson to Paschal, to wit, that they were hearsay and self-serving.

Plaintiffs had a right to show, as a circumstance tending to support their contention, that Tumlinson claimed to own the original certificate at the time the duplicate thereof was issued, and claimed to own the duplicate at the time he conveyed it to Paschal. Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033. If there was any other way, certainly there was no other more satisfactory way, to prove that he claimed to own those certificates at the times stated than to show that he then said he owned same. That he said he owned the certificates doubtless was a mere legal conclusion, and not of itself sufficient to prove ownership; but it was not hearsay when offered as a circumstance from which, considered with other circumstances, to infer that he owned the certificates. That the recitals should be classed as self-serving may be admitted, but that they were did not, we think, render them inadmissible as evidence that Tumlinson then claimed to own the certificates. Where the fact that a person at a given time claimed to own property in controversy is relevant and competent as a circumstance to support an inference that he did then own it, we do not understand that testimony offered to prove the fact is inadmissible because it is a self-serving declaration of that person. Hickman v. Gillum,

66 Tex. 316, 1 S. W. 339; Lockridge v. Corbett, 31 Tex. Civ. App. 676, 73 S. W. 98. We are of opinion, therefore, that the recitals, in so far as they were offered to prove that Tumlinson claimed to own the certificates, were not subject to the objection urged to them.

It is insisted, however, that, on the grounds stated, the recitals were inadmissible to prove the truth of matters they stated as facts. The trial being by the court without a jury, if the recitals were admissible for any purpose, it should be assumed that the court considered them for that purpose alone, and the fact that they were inadmissible for other purposes would not be a reason for reversing the judgment. But we are of opinion that the court, under the circumstances of the case, had a right to consider the recitals as evidence of the truth of the facts they stated. Harrison v. Fryar, 8 Tex. Civ. App. 524, 28 S. W. 250; McMahon v. McDonald, 51 Tex. Civ. App. 613, 113 S. W. 322; Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033. As shown above, the proof of loss was made in 1848, and the transfer to Paschal in 1851, more than 60 years before the cause was tried, when, presumably, Tumlinson and Paschal were both dead. The proof of loss was filed in the General Land Office at the time, or before, the duplicate certificate was issued, and in 1880 the deed to Paschal was spread upon the records of Red River county, where land had been surveyed by virtue of the duplicate certificate. It was shown that all the records of Titus county, where the land in controversy was situated, were destroyed by fire in September, 1895. And it was shown that from the time Morrill conveyed the duplicate certificate to him in 1860 to the time this suit was commenced, to wit, March 4, 1911, Epperson and those claiming under him continuously asserted title, first, to the certificate, and then to the land located by virtue of it, and that until a few years before the suit was filed no one else asserted title to either the certificate or the land. We do not regard the cases cited by appellants as supporting their contention, when considered with reference to their respective facts, as opposed to the views we have expressed.

[3, 4] But if the recitals objected to in the documents referred to were inadmissible and should not have been considered by the court for any purpose, it should be assumed the court did not consider them, and, if the other testimony was sufficient to support an inference that Tumlinson had acquired the title of Nancy Walker, the judgment should not be set aside for the errors of the court in admitting the documents as evidence. We are of opinion the other circumstances shown by testimony were sufficient as a basis for the inference.

As before stated, it was shown that B. H. Epperson died September 6, 1878. He left a will which was probated October 2, 1878, in which he named J. P. Russell and R. B. Epperson as his general executors, and E. S. Epperson as his executor to manage and control a certain plantation for a period of five years, after which said E. S. Epperson was to act with J. P. Russell and R. B. Epperson as general executors of the will. October 8, 1878, Russell and R. B. Epperson qualified as general executors and E. S. Epperson qualified as executor for the special purpose stated.

Appellants Dunn, Fee, Jackson, and Stewart offered in evidence a judgment rendered in a justice court of Marion county March 29, 1880, in favor of W. S. Harris against "J. P. Russell and R. B. Epperson as executors of the last will and testament of B. H. Epperson, late of Marion county, deceased," and against A. U. Wright, for the sum of $113.32. The judgment, on objections thereto interposed by plaintiffs, was excluded as evidence, and the action of the court in excluding it is assigned as error. We are inclined to think the judgment was not inadmissible on any of the grounds urged against it, but we do not feel called upon to determine whether it was or not, for if it was admissible the error of the court in excluding it, on the record as it is presented to us, would appear to be harmless. It does not appear from the bill of exceptions made the basis of the assignment presenting the contention, or otherwise from parts of the record we are authorized to consider, that said appellants offered to prove that the land was sold under the judgment in question. Unless the land was lawfully sold under the judgment, their rights could not have been prejudiced by the refusal of the court to admit the judgment as evidence.

[5] Appellant Dunn insists that plaintiffs "were not entitled to recover of the defendants Fee, Jackson, and Stewart any rents for the use of the premises, and therefore those defendants were not entitled to recover against him any interest on the money for the purchase of said land." The contention is predicated on the claim that it appeared from the testimony that the land was wild, unproductive, and without rental value, except for improvements placed on it by said Fee, Jackson, and Stewart after they purchased it in 1909. As we understand the record, it did not conclusively appear that the land was without rental value. The witness Moore testified that by an arrangement he had with Thomas (or one Holbrook, as Thomas' agent), who conveyed the land to appellant Dunn in May, 1903, he fenced the land, and thereafterwards while Thomas owned it, and until Dunn sold it to said Fee, Jackson, and Stewart in April, 1909, used it as a pasture for horses and cattle, having on it at times as many as from 700 to 800 head. He further testified that at the time he fenced it about 100 acres of the land had been cleared, but, he added, that the cleared part was not cultivated during the time he used the land as a pasture. He further testified that while

he had possession of the land he "cleared off a little field and planted a little crop" on it. It further appears from the statement of facts that it was agreed between the parties that 40 acres of the land had been cleared (when, not stated); that 30 acres of it, lying north and west of the slough, were in cultivation; and that 6 acres south of the slough were in cultivation. In view of the testimony referred to, we do not think it can be said to have so conclusively appeared that the land was without rental value as to require us to hold that there was no basis for the finding in plaintiffs' favor against Fee, Jackson, and Stewart for rents.

[6] As stated above, appellant Yantis claimed that the duplicate certificate by virtue of which the land was surveyed was issued to William Walker as the heir of Nancy Walker, deceased, and that he had acquired the title of that William Walker. The contention was that there were two William Walkers—one in whose right the original certificate was issued to Nancy Walker, and the other, one to whom the duplicate certificate was issued as the heir of Nancy Walker. If the testimony in the case warranted a finding that the William Walker named in the duplicate certificate was not the William Walker named in the original certificate, the judgment as to said appellant Yantis would have to be affirmed because of his utter failure to show that the William Walker, whose title he had acquired, was the William Walker to whom the duplicate certificate was issued. But the testimony admits of no other reasonable conclusion than that the William Walker mentioned in the certificates was one and the same person. It conclusively appears from the record that the William Walker who acquired the right to the original certificate was dead when it was issued in August, 1838, and it as conclusively appears that that certificate was issued to Nancy Walker as his heir. That the William Walker mentioned in the duplicate certificate was the William Walker mentioned in the original certificate, we think almost conclusively appears from the face of the duplicate certificate itself as set out below:

"1014/1113.          General Land Office, Austin, December 14, 1848.

"This is to certify that satisfactory evidence having been produced of the loss of headright certificate No. 566, class 1st, issued by the board of land commissioners of Washington county to Wm. Walker, heir Nancy Walker, for three-fourths of a league and one labor of land, date not recollected, this duplicate will, therefore, entitle the legal representatives of William Walker, dec'd, to all of the benefits granted in said original certificate. In testimony," etc.

Evidently the Commissioner of the General Land Office intended by the language he used to be understood as meaning that the legal representatives of the William Walker in whose right the original certificate was issued, and not the legal representatives of some other then deceased William Walker, were the beneficiaries of the certificate. But if he meant some other William Walker than the one in whose right the original certificate was issued, it could not have been the William Walker under whom appellant Yantis claims, for that William Walker, it appears from testimony offered by said Yantis, was alive in 1886, whereas the William Walker mentioned in the duplicate certificate was dead in 1848.

The judgment is affirmed.

### On Motion of Appellants Dunn, Fee, Jackson, and Stewart for Rehearing.

[7-9] In overruling assignments in which appellants Dunn and Fee, Jackson, and Stewart complained of the action of the trial court in excluding the judgment of the Marion county justice court as evidence, we said:

"It does not appear from the bill of exceptions made the basis of the assignments presenting the contention, or otherwise from parts of the record we are authorized to consider, that said appellants offered to prove that the land was sold under the judgment in question. Unless the land was lawfully sold under the judgment, said appellants' rights could not have been prejudiced by the refusal of the court to admit the judgment as evidence."

In the motions it is earnestly insisted that it did appear from the record that the land was so sold, and as supporting their contention said appellants quote from the statement of facts as follows:

"It is hereby agreed by the parties that the defendants Fee, Jackson, and Stewart acquired and now hold all of the right, title, interest, and estate in and to the Wm. Walker survey that was acquired by G. Hargrove by virtue of the sheriff's deed dated June 7, 1881, above copied."

The same quotation was made in the opinion, except that the words "above copied" were omitted—because as a matter of fact the deed referred to, or a statement of its contents or any of same, was not in the statement of facts.

As further supporting their contention, said appellants, in their motions, as they did in their briefs, call attention to the fact that a deed dated June 7, 1881, purporting to have been made by the sheriff of Titus county and to convey the land to Gulie Hargrove as the purchaser at a sale thereof made by virtue of an execution issued on a judgment of said justice court rendered "in favor of W. S. Harris against J. P. Russell, R. B. Epperson, executors of B. H. Epperson, deceased, and A. U. Wright on the 29th day of March, 1880," was copied in a bill of exceptions in the transcript taken by said appellants to the action of the trial court in sustaining objections to said deed and excluding it when it was offered as evidence.

No error having been assigned to the action of the court in excluding the deed, we were, and are, of opinion the bill of exceptions referred to should not have been made a part of the record and was not entitled to be considered as a part of same. Mattfield v. Huntington, 17 Tex. Civ. App. 716, 43 S.

W. 55. If, however, we were wrong in so concluding, and if the bill of exceptions should have been treated as a part of the record, the ruling made by us would not, for that reason, have been different; for said appellants would have been in the attitude, because of their failure to assign error on the action of the trial court in excluding the deed, of acquiescing in the ruling made by that court and of having waived any right they had to complain of it. Rule 24 for the government of Courts of Civil Appeals (142 S. W. xii). The situation which then would have confronted this court would have been this: That it appeared that the trial court, for reasons said appellants conceded to be sufficient, had excluded the deed as evidence. In other words, appellants would have been in the attitude of conceding that they had neither proved nor offered to prove that the land had been lawfully sold under the judgment. In this condition of the record, under the rule (62a) declaring that "no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case," this court would have been without authority to reverse the judgment for the error of the court in excluding the justice's judgment; for it is plain if the land was not lawfully sold under the judgment the error in excluding it not only was not calculated to cause, but could not have caused, the rendition of an improper judgment in the case. Viewing the case from this standpoint, of course the recital in the statement of facts, quoted above and in the opinion, that Fee, Jackson, and Stewart had acquired the title of G. Hargrove by virtue of the sheriff's deed, was entitled to no weight; for, if the title Hargrove had acquired was only such as an admittedly (as we must regard it) insufficient sheriff's deed passed, he had acquired none at all.

[10-13] With reference to the contention of appellant Dunn that it appeared that plaintiffs were not entitled to recover anything of Fee, Jackson, and Stewart as rentals, and therefore that Fee, Jackson, and Stewart were not entitled to recover anything of him as interest on the money they paid him for the land, this statement was made in the opinion:

"It further appears from the statement of facts that it was agreed between the parties that 40 acres of the land had been cleared (when, not stated); that 30 acres of it, lying north and west of the slough, were in cultivation; and that 6 acres south of the slough were in cultivation."

In his motion appellant Dunn insists that the agreement had reference "to the condition of the land after it was improved by Fee, Jackson, and Stewart," and renews his contention that it appeared that Fee, Jackson, and Stewart were not liable to plaintiffs for rents, because it appeared that the land was without rental value except for improvements placed thereon by said Fee, Jackson, and Stewart. We have reached the conclusion, after further examination of the record, that both contentions should be sustained. A fairer construction than that given the agreement in the opinion we now think is that it referred to clearings made on the land by Fee, Jackson, and Stewart after they purchased it. It appeared from the testimony of the witness Crawford, which it seems was not contradicted by any other testimony in the record, that none of the land was cultivated until after Fee, Jackson, and Stewart purchased and improved it. And it appeared that the only use made of it or which could have been made of it, prior to that time without improving it, was the use Moore made in pasturing stock on it, and that he, after fencing it for that purpose, removed the fence he had erected when said Fee, Jackson, and Stewart purchased it. In other words, it was not shown that the land had any rental value except that given it by improvements placed on it by Moore and by Fee, Jackson, and Stewart. Therefore we think it did not appear that plaintiffs were entitled to recover anything of Fee, Jackson, and Stewart for use of the land. Benson v. Cahill, 37 S. W. 1088; Cahill v. Benson, 19 Tex. Civ. App. 30, 46 S. W. 889. As they were not so entitled, and as it appeared that Fee, Jackson, and Stewart took possession of the land when they purchased it, and thereafterwards continued in possession thereof, we think they were not entitled to recover of Dunn interest on the money they paid him. Brown v. Hearon, 66 Tex. 63, 17 S. W. 395; Huff v. Reilly, 26 Tex. Civ. App. 101, 64 S. W. 387. As the error in the judgment in this respect can be corrected here, the cause will not be remanded, but the judgment of this court will be set aside, the judgment of the trial court will be so reformed as to allow Fee, Jackson, and Stewart a recovery against Dunn of only the amount of the money paid by them for the land, to wit, $6,381, and interest thereon from the date of the entry of the judgment of the court below, and as so reformed said judgment of the court below will be affirmed. The motion of appellant Dunn so far as it is for other relief will be overruled, as will the motion of the appellants Fee, Jackson, and Stewart.

## On Motion of Appellants Fee, Jackson, and Stewart for Rehearing.

It is urged in the motion that the conclusion reached by us that it appeared from the testimony that plaintiffs were not entitled to recover anything of Fee, Jackson, and Stewart as rents, and therefore that the

latter were not entitled to recover of Dunn interest on the money they paid him for the land, is erroneous. As, for reasons hereinafter stated, we have determined to set aside the order heretofore made overruling the motion of appellant Dunn and the motion of appellants Fee, Jackson, and Stewart for a rehearing, and the judgment affirming the judgment of the court below in so far as it was in favor of plaintiffs against said Dunn, Fee, Jackson, and Stewart, and in so far as it was in favor of Fee, Jackson, and Stewart against Dunn, and to remand the cause for a new trial as between those parties, the question made as to whether the conclusions complained of were erroneous or not will not be now further considered.

[14, 15] In the opinion affirming the judgment we said, with reference to the action of the trial court in excluding as evidence the judgment rendered by a justice court of Marion county, that we were "inclined to think the judgment was not inadmissible on any of the grounds urged against it," but did not "feel called upon to determine whether it was or not; for if it was admissible the error of the court in excluding it on the record as presented would appear to be harmless." Why we thought the exclusion of the judgment, if error, should be treated as harmless, was stated in the opinion overruling the motions referred to. Further consideration of the matter has resulted in convincing us that, if the trial court erred in excluding the judgment as evidence on the grounds urged by plaintiffs, the error should not be held to be a harmless one within the meaning of rule 62a (149 S. W. x), referred to in the opinion overruling the motions. The conclusion reached that the bill of exceptions based on the action of the court in excluding the judgment was defective because it did not appear from anything in it that the land had been lawfully sold by virtue of an execution issued on the judgment is adhered to as correct, as is also the conclusion: (1) that, error not having been assigned on the exclusion of the sheriff's deed as evidence, the bill of exceptions based on the ruling of the court in that respect should not be treated as a part of the record; and (2) if it should be, that, technically, said appellants were in the attitude of acquiescing in the ruling as correct. But we believe it sufficiently otherwise appears from the record that they were not actually in that attitude, and that it would be unjust to hold that they were. That plaintiffs did not understand that to be their position is shown by their brief, in which they not only do not combat, but virtually concede, the facts to be that said appellants offered the deed as evidence, that same as copied in the bill of exceptions properly was a part of the record on this appeal, and that said appellants had not abandoned their contention that the effect of the judgment and sale thereunder,

had they been permitted to prove same, would have been to pass to them the title to a part, if not all, of the land in controversy. Under the circumstances of the case, if the court erred in excluding the judgment, we believe it would be unfair to apply rule 62a and hold otherwise than that the error "was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment." The question then is: Did the trial court err in excluding the judgment as evidence on the grounds urged against its admission? The judgment was as follows:

"W. L. Harris v. A. U. Wright, J. P. Russell and R. B. Epperson, Executors of B. H. Epperson, Dec'd. No. 2181.

"Attorney, J. Pennman.
"Sworn a/c for cash advanced.
"A/c Filed March 8th, 1880.
"Citation issued same day.
                              "John Grant, J. P.
"Cit. returned executed March 16, 1880.
      "[Signed] M. K. Crawford, Constable.

"Court in session this 29th day of March, 1880.

"This day coming on to be heard came the plaintiff by his attorney and the said defendants having failed to appear and answer in this behalf but wholly made default, whereupon the said W. S. Harris ought to recover against the said J. P. Russell and R. B. Epperson, as executors of the last will and testament of B. H. Epperson late of Marion county, deceased, and against the said A. U. Wright, his damages by occasion of the premises; and it appearing to the court that the cause of action is an account for money held and received and is proven and established in the manner prescribed by law and it further appearing to the court that the defendant was duly served with notice of the pendency of this suit and the court having assessed the damages aforesaid at the sum of one hundred and thirteen 32/100 dollars.

"It is therefore considered by the court that the said plaintiff, W. S. Harris, do have and recover of the said J. P. Russell and R. B. Epperson as such executors and the said A. U. Wright the sum of one hundred and thirteen 32/100 dollars, with interest at the rate of 8 per cent. per annum from date of judgment together with his costs of suit in this behalf expended and that he have his execution.

"It is further ordered that the execution issue in favor of the officers of the court against defendants for costs incurred.
                              "John Grant, J. P.

"Execution issued September 4, 1880, against defendants for one hundred and thirteen 32/100 dollars and sent to Montague county, Texas.

"Alias execution issued February 19/81 against defendant for judgment $113.32 and for costs and placed in the hands of Judge Pennman and directed to the sheriff —— county.
                              "W. F. J. Graham, J. P.

"Returned April 23/81 without any indorsement.

"Alias pluries execution issued April 27/81 against defendants for judgment $113.32 and for costs $8.30 and given to ——"

[16, 17] The grounds of the objection were as follows:

"(1) It appears therefrom that it was a judgment by default against three defendants and shows on its face and by the recitations therein that only one of the defendants was served with notice or citation, and it was therefore void as to the other defendants not served.

"(2) It is immaterial, incompetent, and irrelevant; it not appearing to have been a judgment

against J. P. Russell and R. B. Epperson in their representative capacity as executors of the estate of B. H. Epperson, deceased, if properly served, so as to bind said estate, but against them personally."

We do not think it should be said that the effect of the recital in the judgment "that the defendant was duly served with notice of the pendency of this suit" was to show that only one, and not each, of the defendants was served with citation issued March 8, 1880, and "returned executed March 16, 1880." Properly construed, we think the notation that the citation had been "returned executed" meant that it had been executed as to each of the defendants, and that the use of the word "defendant," instead of "defendants," in the recitation in the judgment, should be viewed as a clerical error. Certainly it should not be said, if the notation could be looked to, and we think it could be, that it affirmatively appeared that each of the defendants had not been cited. And, if the notation should not be looked to in connection with the recital in the judgment, we think it nevertheless should not be said that it so appeared. Turner v. City of Houston, 43 S. W. 69; Hodges v. Robbins, 23 Tex. Civ. App. 57, 56 S. W. 565.

The contention that the judgment did not appear to be "against J. P. Russell and R. B. Epperson in their representative capacity as executors of the estate of B. H. Epperson, deceased," clearly is not tenable. Provisions in the will of said B. H. Epperson, deceased, appointing said Russell and R. B. Epperson executors, were construed in Epperson v. Reeves, 35 Tex. Civ. App. 167, 79 S. W. 845, and were held to create "what is commonly known as an independent administration," as authorized by article 3362, Vernon's Statutes. In such an administration it is expressly provided that:

"Any person having a debt or claim against said estate may enforce the payment of the same by suit against the executor of such will; and, when judgment is recovered against the executor, the execution shall run against the estate of the testator in the hands of the executor that may be subject to such debt." Article 3363, Vernon's Statutes.

And see articles 2004, 2005, Vernon's Statutes; Croom v. Winston, 18 Tex. Civ. App. 1, 43 S. W. 1072.

It is clear, we think, that the judgment was not inadmissible as evidence on either of the grounds relied upon.

The order and judgment of this court as specified above will be set aside, the judgment of the court below so far as it adjudicated the rights of the parties, except the appellant Yantis, will be reversed, and the cause as between all the parties to the appeal, except the appellant Yantis, will be remanded to the court below for a new trial. In so far as the judgment of the court below is in favor of other parties against said appellant Yantis, it will be affirmed.